666 P.2d 92

**The STATE of Arizona, Appellant,**

v.

**Floyd Everett HILL and Tommy James Lopp, Appellees.**

**No. 2 CA–CR 2655.**

Court of Appeals of Arizona,
Division 2.

March 14, 1983.

Rehearing Denied May 23, 1983.

Review Denied June 28, 1983.

Stephen D. Neely, Pima County Atty. by Gus Aragon, Jr., Deputy County Atty., and Reid Sipe, Third Year Law Student under Rule 28(e) Tucson, for appellant.

Frederic J. Dardis, Pima County Public Defender by Allen G. Minker and Yvonne Ayers, Tucson, for appellee Hill.

Henri L. Sadacca, Tucson, for appellee Lopp.

OPINION

HATHAWAY, Judge.

Hill and Lopp, the appellees in this case, were indicted for unlawful possession of stolen property after several stolen items were discovered in a search of their residence by police. The trial court granted appellees' motion to suppress the physical evidence and statements obtained during the search. On motion by the state, the case was dismissed without prejudice pending the outcome of this appeal.

On August 26, 1981, the Pima County Attorney's office received a report from a confidential informant that appellees were in possession of a stolen television set which had a partial price tag still attached, a set of stereo speakers, and a .22 caliber revolver. The county attorney's office relayed this information to the Pima County Sheriff's Department and arranged a meeting between the informant and two detectives. The informant told the detectives that appellees, along with two other men, were involved in nighttime burglaries. Later that night, the two other men were arrested while burglarizing a house.

The informant gave the officers an address for the appellees which was accurate as to the house number but incorrect as to the street; however, he later showed the officers where the appellees lived. According to the informant, appellee Lopp planned to sell the stolen television set to someone at his home at noon on August 27.

Kevin Mulligan, appellee Hill's probation officer, was contacted by the officers and informed of the allegations made by the informant. Mulligan joined the officers in the surveillance of appellees' house a little before noon on August 27 in hopes of observing the proposed sale of the stolen merchandise.

When nothing eventful occurred after more than an hour of surveillance, the sergeant in charge of the investigation terminated the surveillance and directed the two officers to make contact with the residence.

Mulligan and the two officers proceeded to the door of the residence. When Hill answered the door, Mulligan, his probation officer, read him condition 7(k) of his conditions of probation which provides:

"You shall submit person and property to search and seizure at any time of the day or night when so requested by a Probation Officer, with or without warrant and with or without probable cause."

(Mulligan later testified that he would not have entered appellees' residence unless accompanied by the officers because of the informant's statement that appellees possessed a gun.)

After the three men entered the dwelling, the two police officers made an inspection of the premises for armed persons and dangerous weapons. In the living room, they noticed the television and stereo speakers which had been described by the informant. They also noticed a small amount of marijuana in the living room near where Hill was sitting.

At that point, the officers informed Hill of his *Miranda* rights although they did not formally place him under arrest. About the same time, appellee Lopp returned to the residence, accompanied by other deputies. Lopp was requested by the officers to produce identification and they accompanied him to his bedroom for that purpose. The officers noticed marijuana in Lopp's bedroom and informed him of his *Miranda* rights.

The officers then proceeded to obtain a telephonic search warrant which was executed at around 3:30 that afternoon. By matching serial numbers with numbers contained in the Tucson Police Department records section, the officers identified at least three items as stolen property. Appellees were then both placed formally under arrest.

In granting appellees' motion to suppress the evidence obtained from the search of

August 27, the trial court specifically found that Hill's warrantless arrest was unlawful, that the search of the premises prior to obtaining the search warrant was unlawful, and that the telephonic search warrant had been issued without probable cause.

The state presents several theories to support its claim that the motion to suppress was erroneously granted but we need consider only one. It contends that the initial search of appellees' residence was lawful because Hill consented to the search when he accepted his conditions of probation, including condition 7(k). A search conducted pursuant to consent is recognized as an exception to the rule that the search of a home conducted without a warrant is per se unreasonable and therefore invalid. *State v. Clemons,* 27 Ariz.App. 193, 552 P.2d 1208 (1976). Conditions of probation such as condition 7(k) have consistently been recognized by courts as reasonable and necessary to promote the use of probation as an alternative to incarceration. *U.S. v. Consuelo-Gonzalez,* 521 F.2d 259, 266 (9th Cir. 1975). However, it is impermissible for police to use probation officers as a pretext for conducting a criminal investigation, as the Ninth Circuit phrases it, a "stalking horse" for the police. See *Latta v. Fitzharris,* 521 F.2d 246 (9th Cir.1975); *State v. Jeffers,* 116 Ariz. 192, 568 P.2d 1090 (App. 1977). It is, however, well settled that police may accompany a probation officer in such situations to provide protection and to expedite the search, and that nothing precludes mutually beneficial cooperation between law enforcement officials and probation officers. Also, if there is a need because of distance or time, the probation officer can authorize a police search. *State v. Montgomery,* 115 Ariz. 583, 585, 566 P.2d 1329 (1977).

Probation officer Mulligan testified that because of the report that appellees possessed a gun, he would not have entered the residence unless accompanied by the police detectives; that he actively participated in the search of appellees' residence and that it was his policy to follow up on any leads he received concerning his clients.

This evidence clearly shows that Mulligan was himself interested in the search and that his presence was not in any way a mere pretext for conducting a criminal investigation. This is not the type of case in which the probation officer was used as a "stalking horse" by the police.

Although the police officers may have had an independent motive for searching appellees' residence, this fact alone does not invalidate an otherwise valid search. This court has recently recognized that when one governmental agency is lawfully on the premises in aid of another agency's investigation, any evidence obtained in the course of a lawful search is admissible against the defendant in a subsequent criminal proceeding. *State v. Superior Court,* 136 Ariz.App. 78, 664 P.2d 228 (1983). Because the evidence does not support the conclusion that Mulligan was used merely as a pretext by the police to gain entrance to and conduct a search of appellees' residence, we find the trial court's conclusion that the search was unlawful is clearly erroneous and vacate the order suppressing evidence obtained in the course of the search.

Reversed.

HOWARD, C.J., and BIRDSALL, J., concur.