MR. WOOLFENDEN: Most of this isn't in the discovery.

Right?

\* \* \* \* \* \*

This hasn't been disclosed to me before. This is news. This is disturbing.

We conclude, therefore, that defendant was denied effective assistance of counsel by counsel's failure to interview any of the state's witnesses prior to trial and that this error was not harmless.

We need not consider the remaining issues. For the reasons stated, the judgment and sentence are reversed and the matter is remanded for a new trial.

HAIRE and OGG, JJ., concur.

674 P.2d 338

The STATE of Arizona, Appellee,

v.

Karl H. LaGRAND, and Walter B. LaGrand, Appellants.

Nos. 2 CA–CR 2720, 2 CA–CR 2721.

Court of Appeals of Arizona, Division 2.

Dec. 16, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and Jack Roberts, Phoenix, for appellee.

John R. Ditsworth, Tucson, for appellant Karl LaGrand.

David P. Tiers, Tucson, for appellant Walter LaGrand.

## OPINION

BIRDSALL, Judge.

The information filed November 2, 1981, charged the respective defendants-appellants with the following crimes:

Count 1, Karl H. LaGrand (Karl) and Walter B. LaGrand (Walter), armed robbery with a gun, committed *October 9, 1981.*

Count 2, Karl and Walter, kidnapping, also *October 9, 1981.*

Count 3, Karl, armed robbery with a gun, committed *October 12, 1981.*

Count 4, Karl, kidnapping, *October 12, 1981.*

Count 5, Karl, aggravated assault with a gun, *October 12, 1981.*

Count 6, Karl, kidnapping, *October 12, 1981.*

Count 7, Walter, possession of a gun by a felon, committed *October 14, 1981.*

Not charged in the information because it was dismissed by a justice of the peace following the preliminary hearing was a charge of attempted armed robbery against both appellants alleged to have been committed on *October 14, 1981.*

The trial court severed Count 1 and 2 from Counts 3 through 6, inclusive, and Count 7 from all the other counts. Both appellants were convicted of Counts 1 and 2 in their joint trial. Prior felony convictions were found and the crimes were found to be of a dangerous nature.

Karl was also convicted of the charges in Counts 3 through 6, inclusive, in a separate trial. These offenses were also found to be dangerous. The disposition of Count 7 is not before us in this appeal.

The appellants each present similar issues on appeal. Karl contends:

1) The admission of evidence of the October 9 crimes in his separate trial on the October 12 charges was reversible error.

2) The admission of evidence of the alleged attempted robbery on October 14 in

the joint trial concerning the October 9 crimes was reversible error.

3) The trial court erred in denying challenges for cause of veniremen who had ties to banking since Karl and Walter had been accused of killing a bank manager subsequent to the robberies.

Walter contends:

1) It was reversible error to admit evidence concerning the October 14 attempted robbery, and

2) The trial court erred in refusing to strike a venire panel member who admitted having formed and expressed an opinion concerning the homicide. We affirm. The evidence shows the following concerning each of the different incidents.

### October 9

Carl Hanson was the manager of the Grant Road Safeway market near the intersection of Park Avenue in Tucson. At about 9 p.m. he noted Karl standing in one of the aisles. Karl was wearing blue pants, a green army coat, a pillbox type cap and sunglasses. He was looking up and down the aisles rather than at the merchandise. Karl asked Hanson if he was the manager and showed him a small-caliber, silver-plated handgun. He instructed Hanson to open the safe. About $878 was placed in a bag for Karl and Hanson proceeded out of the store ahead of Karl as directed. Upon leaving the store, Hanson was directed to turn right. Karl went the opposite direction and left in a cab which was waiting at the rear of the store.

Another store employee observed Karl with Hanson in the store and saw them leave. The cab driver identified Walter as the man who flagged him down in front of the Safeway. Walter told him he was waiting for a friend and asked him to park at the side of a building by a hedge. He said his friend would come out from a nearby apartment complex but he did not want the cab parked near the apartments. Walter left the cab to make a phone call at the Safeway, returned, then went again to the store to make a second call. Before he returned again another man appeared, asked the cab driver if he was waiting for someone and got into the back seat of the cab. Walter then returned, got in the cab and told the driver to go to a destination different from that he had originally given the driver.

Another Safeway employee testified that he saw Walter that evening in the parking lot on four different occasions, speaking to him once. Walter was wearing a black Pittsburgh Pirates baseball cap with yellow stripes. He saw Walter leaving the lot after the robbery.

### October 12

At about 8:45 p.m. Karl, again wearing sunglasses, approached the manager of Fry's Food Store on Ft. Lowell Road in Tucson, Virginia Rodriguez. He told her he wanted to return some groceries. A clerk, Arnold Waffer, encountered the two at that moment. Karl pulled a small-caliber handgun and told them this was a holdup. They went to the safe, the manager put money into a bag, and Karl then directed them to walk out of the store ahead of him and once outside to turn in one direction. He fled in the other. No getaway vehicle was seen.

### October 14

In the late afternoon at the Safeway Store near Broadway and Campbell Avenue, assistant manager Aggie Crist observed a man, Karl, in a wig and sunglasses loitering in the store. She was aware of the previous Safeway robbery on October 9 and became suspicious. She went to the manager's office and attempted unsuccessfully to call the Grant store to obtain a description of the robber. The man then approached her and as he got close she said "Tucson Police" into the phone as if she had reached the police department. Apparently hearing this the man walked out of the store and into the parking lot. In the meantime she did reach the police, an officer responded and encountered Karl and Walter in Walter's car in the lot. Aggie Crist kept Karl in view and watched him

get into the car where the two were apprehended.

Both men were arrested and a search of the vehicle disclosed the wig under the passenger seat where Karl was sitting and a small-caliber handgun under Walter's driver's seat. The two claimed at first they did not know each other and that Walter had picked up Karl hitchhiking. They eventually admitted they were half-brothers.

The October 14 incidents were admitted in the joint trial of the October 9 robbery. They were not admitted in Karl's separate trial for the October 12 crimes. However the October 9 incidents were admitted in that separate trial. None of the evidence of the October 12 robbery was mentioned in the joint trial.

■ We first consider Karl's contention that the October 9 evidence should not have been admitted in his separate trial for the crimes of October 12. The appellant, Karl, argues that showing that prior bad act was a violation of Rule 404(b),[1] Rules of Evidence, 17A A.R.S. *See State v. Rose,* 121 Ariz. 131, 589 P.2d 5 (1978); *State v. Henderson,* 116 Ariz. 310, 569 P.2d 252 (App. 1977). The appellee counters that the evidence was admissible to show common scheme or plan. Rule 404(b), *supra; State v. Jackson,* 124 Ariz. 202, 603 P.2d 94 (1979). We agree with the appellee. The two incidents must be analyzed to determine the nature and degree of any similarities. If there are similarities where one might expect difference the evidence is generally held to be admissible. *State v. Jackson, ibid.* Aside from the facts that both robberies were at large chain food stores, involved only one robber in the store and happened at the same time of night, about 9:00 p.m., we find the following similarities which are peculiar to the two events which might be expected to be different:

1) the robber was wearing dark sunglasses at night;

2) he approached the victim asking if that person was the manager;

3) he had the victim go to the safe and put the money in the bag;

4) he pulled a small-caliber handgun from his right pocket, showed it to the victims and returned it to his pocket, and

5) he had the victims precede him out of the store, turn right, and he then left in the other direction.

These acts evidenced a modus operandi that indicated he was carrying out a plan and also identified him as the same person who committed both crimes. *State v. Jackson, ibid.* Even though Karl was identified positively by the victims on both occasions, the prosecution is entitled to show this additional evidence of identity to satisfy that element of the crime. There was no error.

■ Turning now to the admission of the October 14 events in the joint trial of the October 9 crimes. We find this evidence was admissible for the same reasons. It was an attempted robbery of a Safeway store by the same two men. Again Karl entered the store while Walter waited outside acting as a lookout and providing a getaway vehicle. Karl was wearing sunglasses. He was loitering in the store, not shopping. He approached to within hearing distance of the assistant manager in the manager's office. When arrested a small-caliber gun was found hidden under the driver's seat. The inference was that Karl had this weapon with him in the store and hid it under the driver's seat at the same time he concealed the wig.

The October 14 evidence serves the additional purpose of tying the two men together: it is proof of intent, preparation, plan and identity; it shows an absence of accident, that is, it shows that the presence of Walter at the scene of the October 9 robbery was not accidental, and it shows that the availability of the taxi for Karl's getaway on October 9 was not merely a fortui-

---

1. "*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

tous happenstance. *See State v. Rose, supra.*

We are also confronted with an additional question regarding the admission of the October 14 facts in the joint trial. It is well settled in Arizona that neither a prior or subsequent bad act can be shown unless the proof of that other crime is by sufficient evidence to take it to a jury. *State v. Mitchell,* 112 Ariz. 592, 545 P.2d 49 (1976); *State v. Hughes,* 102 Ariz. 118, 426 P.2d 386 (1967). The proof of another crime must be both as to its commission and its commission by the defendant. *State v. Mitchell, supra; State v. Hughes, supra; see also State ex rel. LaSota v. Corcoran,* 119 Ariz. 573, 583 P.2d 229 (1978); *State v. Marahens,* 114 Ariz. 304, 560 P.2d 1211 (1977).

The proof of what happened on October 14 was sufficient to get to the jury on the commission of attempted armed robbery by the appellants as originally charged. The evidence shows Karl was loitering in the Safeway store and apparently overheard the assistant manager say "Tucson Police" into the phone; he was wearing a wig and sunglasses; he walked out of the store and got into Walter's automobile in the Safeway lot; he hid the wig under the passenger seat; the brothers denied knowing each other and a gun was found under the driver's seat. These facts show that criminal activity was intended. They do not constitute innocent conduct. There is no plausible explanation for wearing the wig in the market, or for leaving the store upon hearing a call to the police, or for hiding the wig and the gun, or for denying that one knows his own brother.

When Karl entered the Safeway with the intent to rob, this constituted the necessary act toward the commission of the offense required by the statute defining attempt. A.R.S. § 13–1001(2). He had then intentionally taken a step in a course of conduct planned to culminate in the commission of the offense. As for Walter, when he waited outside in the Safeway parking lot with the means of escape, he was engaging in conduct intended to aid in the commission of the offense. *See* A.R.S. § 13–1001(3). The crime of attempt still consists of the elements of intent to commit the crime and an overt act toward its commission. *See State v. McCullough,* 94 Ariz. 209, 382 P.2d 682 (1963); *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970).

In order to reach a jury the evidence must be substantial enough to warrant a conviction. It is not necessary to prove the crime beyond a reasonable doubt. *State v. Mitchell, supra.* The trial court has a duty to deny a motion for judgment of acquittal if the evidence is of such substance that a jury could determine a crime was committed. *See State v. Mosley,* 119 Ariz. 393, 581 P.2d 238 (1979); Rule 20, Rules of Criminal Procedure, 17 A.R.S.

Our supreme court, citing several federal circuit court opinions, has defined "substantial evidence" as "evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt". *State v. Jones,* 125 Ariz. 417 at 419, 610 P.2d 51 (1980); *see also State v. Nelson,* 129 Ariz. 582, 633 P.2d 391 (1981) where the court, citing *Jones* and *Mosley, supra,* said, "Evidence is sufficient to survive a motion for directed verdict of acquittal when reasonable minds may differ whether the evidence establishes guilty knowledge." 129 Ariz. at 587, 633 P.2d 391.

## Jury Challenges

Karl contends that the trial court should have granted his challenge to panel members Elvira Valenzuela in his separate trial and Hilda Harker in the joint trial. Walter also contends the refusal to strike Mrs. Harker was error. The jury selection in each case was complicated by the subsequent homicide we have previously mentioned. The appellants were charged with murdering a Valley National Bank manager in Marana during a robbery of that bank. There was great notoriety attached to that killing. It received extensive publicity, particularly because the appellants had just been released from custody on these rob-

bery charges. Consequently the trial court conducted the voir dire on an individual basis and each panel member was asked about any knowledge of the homicide and also any banking connection.

The voir dire of Mrs. Valenzuela revealed that she was an employee of the Valley National Bank, but knew no one at the Marana branch. Although she knew of the robbery and homicide there, had discussed it and may have even formed some opinion about that, she unequivocally stated she could keep an open mind and decide the instant case only on the evidence presented and would not be influenced by the subsequent event. This was sufficient for the trial court to deny the challenge. *State v. Tison*, 129 Ariz. 546, 633 P.2d 355, cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147, reh. denied, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); *State v. Greenawalt*, 128 Ariz. 388, 626 P.2d 118, cert. denied, 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136 (1981).

Regarding Mrs. Harker, her examination showed she knew of the Marana incident and had formed an opinion but realized the instant case was a separate matter. She stated she could put Marana out of her mind. Her husband was a retired employee of the Valley National Bank and knew the Marana homicide victim. She had heard the name of the victim-manager but had not known him personally. Again the trial court committed no error in denying the challenge.

A motion for new trial was made alleging that Mrs. Harker was guilty of misconduct in responding to answers during voir dire. *See* Rules of Criminal Procedure, Rule 24.1(c)(3)(iii), 17 A.R.S. The only offered proof of the alleged misconduct was an affidavit of present counsel for Karl which said:

"I, JOHN DITSWORTH, do hereby state that I was informed by a potential juror that another potential juror in the above-entitled action Hilda Harker, commented during the voir dire procedures that her husband had not only known the victim in the defendant's murder case, but had in fact procured for him his employment at Valley National Bank. Additionally she made comments concerning her desire to see the defendant severely punished."

This proof is totally inadequate. It is double hearsay. It does not show to whom the claimed statements were made or when. It did not constitute competent evidence. *See State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637 (1983); *State v. Marvin*, 124 Ariz. 555, 606 P.2d 406 (1980). The trial court properly denied the motion for new trial.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.