717 P.2d 462

**The STATE of Arizona, Appellee/Cross Appellant,**

v.

**Kenneth Gene WEBB, Appellant/Cross Appellee.**

**Nos. 2 CA–CR 3476–2, 2 CA–CR 3477–3.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 18, 1985.

Reconsideration Denied Jan. 9, 1986.

Review Denied April 8, 1986.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee/cross appellant.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant/cross appellee.

## OPINION

BIRDSALL, Presiding Judge.

In these consolidated cases the appellant was found guilty of one count of burglary in the third degree, committed March 8, 1983, one count of fraudulent scheme and artifice, one count of theft, and three counts of forgery, all committed March 9 and 10, 1983. He was sentenced to five years, 15.75 years, 11.25 years, and 10 years respectively, all sentences to run concurrently. These sentences were enhanced because of three prior nondangerous felony convictions. Each was the presumptive sentence for the offense with the priors.

The appellant raises three issues:

1) whether there was probable cause to arrest him before he was searched by police officers;

2) whether the use of a parole officer by the police to gain entrance to his apartment to search violated his Fourth Amendment rights; and

3) whether it was reversible error for the trial court to allow evidence of a burglary for which he was not charged. We affirm.

The state cross-appeals on grounds that the trial court erred in failing to sentence the appellant based on his having committed his crimes while on release. The issues raised on appeal and cross-appeal are easily severable and will be treated separately.

## I. ARREST

The record reveals that on March 11, 1983, a police officer received a radio dispatch that a forgery was in progress, that the subject was a blonde male approximately 25 years old, and that the officer would be met at the bank entrance by an employee. When the officer arrived at the bank, the employee who met him pointed to the appellant and said he was the one passing bad checks. The officer, accompanied by another officer, approached the appellant as he was standing in line and requested that he accompany them to a back room. Once there, the appellant was read his *Miranda* rights and refused to answer any questions. The first officer then returned to the bank lobby where he learned further that the bank had an alert out for the person writing the checks, that the checks had been stolen from a business, and that there were several checks involved.

Returning to the back room, the officer obtained two University of Arizona identification cards from the appellant. Both bore the appellant's picture but each gave a different name, neither of which was his. The officer then conducted a pat-down search of the appellant and found a large wad of cash. It was only after obtaining the two false identification cards and searching the appellant that he was formally placed under arrest.

While we agree with the decision of the trial court denying the motion to suppress this evidence, we use different reasoning. The trial court apparently found that, even though the appellant was not free to go, he was not "under arrest" when he was first taken from the bank lobby into the back room where he was read his *Miranda* rights. Rather, the court found this to be a period of "initial detention," which ripened into an arrest only after the officer returned to the bank lobby and obtained more detailed information. This new information, coupled with the information the officer had when he arrived at the bank, was found sufficient to constitute probable cause to arrest.

We believe that the officer had sufficient probable cause to arrest the appellant and to search him incident to that arrest when he first arrived at the bank in response to the radio dispatch and the bank employee pointed to the appellant as the person passing bad checks.

An officer may make an arrest without a warrant if he has probable cause to believe that a felony has been committed and the person to be arrested committed the felony. A.R.S. § 13–3883. Thus, a probability of criminal activity is all that is required, not a prima facie showing. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); *State v. Emery*, 131 Ariz. 493, 505–506, 642 P.2d 838, 850–851 (1982). Those probabilities "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

In the instant case, the officer was justified in thinking it probable that a forgery was about to be committed by the man identified by the bank employee. It would be reasonable to assume that the bank in which forged checks are being cashed is in the best position to identify the culprit. A report to the police that a forgery was about to occur, accompanied by a

description of the man who was later pointed out to the officer, was sufficient grounds for the officer to arrest that individual. If an unknown citizen's report that a crime has been committed can form the basis of probable cause, see *State v. Harris*, 131 Ariz. 488, 642 P.2d 485 (App.1982) and *State v. Diffenderfer*, 120 Ariz. 404, 586 P.2d 653 (App.1978), a fortiori such a report from a known private citizen can be grounds for probable cause. Simply because the officer does not utter the words, "You are under arrest," until a later time, in this case after a search had been affected, does not mean that probable cause for that arrest did not exist at an earlier time. *State v. Valenzuela*, 121 Ariz. 274, 275, 589 P.2d 1306, 1307 (1979).

## II. WARRANTLESS SEARCH

The facts necessary to decide this issue are as follows. On March 8, 1983, a room used for making photo-identification cards at a University of Arizona gymnasium was broken into. Shortly afterward, a photograph found on the floor of the burglarized room was identified by several university employees as that of the appellant.

On March 10, the university police officer assigned to investigate the break-in attempted to contact the appellant's work furlough officer. When he was unsuccessful, the officer spoke instead to a parole officer who had never before met the appellant but who was authorized to act for the appellant's work furlough supervisor in his absence. Explaining to the parole officer that the appellant was suspected of a burglary, the police officer suggested a search of the appellant's room.

Later that day, two university police officers, the parole officer, and the school superintendent met at the Arizona School for the Deaf and Blind, where the appellant worked. Failing in their attempt to locate the appellant, they proceeded to his room, which was opened for them by the school superintendent. The parole officer began to search the apartment, but was shortly reminded by the police that they could not assist him unless asked. Their assistance was immediately requested because "they knew exactly ... what they were looking for." During the search, a floor vent in a hallway was opened, disclosing shotgun shells, money, and Gerhart Moehring Company checks.

As a condition of his work release, the appellant was required to consent to a search of his apartment by his work furlough officer. The condition read as follows:

"I will submit to a search of my person, automobile or place of residence by a work furlough officer at any time, day or night, with or without a warrant, upon reasonable cause as ascertained by my work furlough officer or a work furlough supervisor."

The appellant argues first that consent was given to a search only by his own work furlough officer or supervisor and not by a parole officer who had never even met the appellant. He contends that because the parole officer was neither of these, he had no authority to search.

We concede that the plain language of the agreement could lead to this interpretation. We do not, however, think the agreement was intended to be so restrictive. This court has held that a parole officer has a duty to determine whether or not a parolee is complying with the conditions of his probation. *State v. Turner*, 142 Ariz. 138, 688 P.2d 1030 (App.1984). A condition of parole which allows a work furlough or parole officer to search the parolee, his automobile, or his home is for the purpose of assuring that the defendant is complying with the conditions of his release. We do not see that the purpose of such a condition is served any less when the search is conducted by a parole officer other than the one specifically assigned to that parolee. Further, given the facts and circumstances in this case, we cannot see any reason why the appellant's work furlough officer, had he been available, would not have consented to and participated in the search, just as did the parole officer who was available. The appellant was not in any way prejudiced because his apart-

ment was searched by one parole officer rather than another.

■ Appellant's second argument is that the university police used the parole officer as a "stalking horse," purely for the purpose of avoiding the warrant requirement, and that the search was therefore a pretext search which violated the appellant's Fourth Amendment rights. We disagree. The fact that the police initiated the search is not determinative. See *State v. Turner,* supra. In *State v. Hill* this court held that "it is impermissible for police to use probation officers as a pretext for conducting a criminal investigation, as ... a 'stalking horse' for the police." 136 Ariz. 347, 349, 666 P.2d 92, 94 (App.1983). We also held in that case, however, that "nothing precludes mutually beneficial cooperation between law enforcement officials and probation officers." *Id.*

Just where valid cooperation crosses the line and becomes purposeful circumvention of the warrant requirement is not always clear. See generally 3 W.R. LaFave, Search and Seizure § 10.10(e) (1978). However, some boundaries, though cloudy, are discernible.

■ First, there must be "reasonable cause" for the search, despite the existence of a consent-to-search condition.

"Even when the search condition is valid, there are still limitations on both probation and peace officers in making warrantless searches.... [T]o justify a search, 'there must be a reasonable cause which may be less than the grounds for an arrest or search warrant ... and such a search may not be for purposes of harassment or merely because the suspect happens to be a probationer or parolee....' " *United States v. Johnson,* 722 F.2d 525, 527 (9th Cir. 1983), quoting *People v. Guerrero,* 85 Cal.App.3rd 572, 583, 149 Cal.Rptr. 555, 560 (1978).

In *Johnson,* supra, the Ninth Circuit held that a consent-to-search clause did not permit the search of a probationer's house where 1) the probationer had done nothing to trigger the search, 2) the agents had no reason to suspect the probationer of misconduct, and 3) the only justification for the search was that they were already in the probationer's house for the purpose of executing an arrest warrant for his roommate. 722 F.2d at 528.

■ Unlike *Johnson,* there was sufficient evidence to constitute reasonable cause in the case before us. A photograph of the appellant was found on the floor of the burglarized room at the university; evidence indicated the photograph was not there prior to the break-in; and marks on the photograph indicated it was taken with the equipment found in that room.

■ In -addition to the requirement of reasonable cause, the cause for the search must relate in some way to effective probationary supervision. *United States v. Johnson,* 722 F.2d at 528. This test is more difficult, the line between "probationary purpose" and "investigative purpose" being very fine indeed.

"[S]ome courts have said that the dominant consideration is the purpose underlying the search in question.... This is quite obviously not an easy test to apply. For one thing, it is doubtless true that in a great many instances multiple purposes are involved; the police are understandably primarily interested in the detection of crime, and the probation or parole officer has as his primary concern the matter of supervision. Moreover, the circumstances surrounding the search are not likely to point inevitably toward one purpose as opposed to the other. The situation is further complicated by the fact that 'the correctional officer has historically performed two separate functions, rehabilitation and enforcement." W.R. LaFave, Search and Seizure, § 10.10(e), at 449–450 (1978). (Citations omitted.)

In *State v. Hill* we held that, where the parole officer actively participated in the search of the parolee's residence and was himself clearly interested in the search, he was not used by the police merely as a pretext to gain entrance into and search

that residence. *State v. Hill*, 136 Ariz. at 349, 666 P.2d at 94.

■ In the case before us, the parole officer was an active participant in the search. The information known to the police and to the parole officer indicated that the appellant had committed a crime which would, of course, be a violation of his probation. Thus, the parole officer was understandably interested in making the search, and we believe it can be said that, from his standpoint, it was for a probationary purpose.

### III. PRIOR BAD ACTS

Sometime during the weekend of March 5th and 6th, 1983, the Gerhart Moehring Company's building was burglarized. Cash and checks were taken from a locked file drawer and a walk-in safe. The safe was opened by tampering with the cylinders. Sometime after the break-in, checks totaling approximately $5,600 were drawn on the Gerhart Moehring account by "David Chapman" and "Scott Hall." These were the same names appearing on the two identification cards—each carrying appellant's photograph—obtained from appellant after his arrest at the bank. The state did not charge the appellant with the burglary.

■ The appellant moved in limine to preclude any reference to the fact that the Gerhart Moehring checks were taken as a result of a burglary. He argues that reference to a prior bad act is inadmissible under Rule 404(b), Arizona Rules of Evidence, 17A A.R.S., which provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evidence of prior bad acts is inadmissible to show the propensity of a defendant to commit crimes both because it would unduly prejudice the defendant and because it lacks probative value with regard to the crimes for which the defendant is on trial. *State v. Eisenlord*, 137 Ariz. 385, 670 P.2d 1209 (App.1983).

■ Evidence of a prior crime is admissible, however, if offered to complete the story of the crime for which the defendant is on trial, even though it reveals that another criminal offense has been committed. *State v. Cruz*, 137 Ariz. 541, 672 P.2d 470 (1983); *State v. Reinhold*, 123 Ariz. 50, 597 P.2d 532 (1979); *State v. Collins*, 111 Ariz. 303, 528 P.2d 829 (1974). In this case, the theft of the checks from Gerhart Moehring clearly completes the story of the forgery of those checks and is, therefore, an exception to the general rule of inadmissibility.

■ Appellant further argues, correctly, that evidence of a separate crime is inadmissible unless sufficient to take to the jury. *State v. Marahrens*, 114 Ariz. 304, 307, 560 P.2d 1211, 1214 (1977); *State v. LaGrand*, 138 Ariz. 275, 280, 674 P.2d 338, 343 (App.1983). We disagree, however, with the argument that, because the appellant was not charged with the Gerhart Moehring burglary, such evidence did not exist.

■ It is not necessary that the evidence prove the crime beyond a reasonable doubt, but only that it be substantial enough to warrant a conviction. *State v. LaGrand*, 138 Ariz. at 280, 674 P.2d at 343. Our supreme court has ruled that evidence is substantial enough if a reasonable person "could accept [it] as adequate and sufficient to support a conclusion of defendant's guilty beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). It is irrelevant that the state chooses not to charge the appellant with the crime.

■ The record showed the appellant to have locksmith abilities. The burglaries at both the gymnasium and the Gerhart Moehring building appear to have been accomplished by someone having those abilities. Additionally, checks stolen from Gerhart Moehring were found in a floor vent

of the appellant's apartment. Thus he had unexplained possession of recently stolen property. We find this evidence substantial enough to support a conclusion of the appellant's guilt and, therefore, to take it to a jury.

Finally, the trial court is afforded wide discretion with regard to the admissibility of prior bad acts. *State v. Romero*, 130 Ariz. 142, 144, 634 P.2d 954, 956 (1981). The function of this court is to review the record and determine whether there was a reasonable basis for the trial court's ruling. *Sears Roebuck and Co. v. Walker*, 127 Ariz. 432, 621 P.2d 938 (App. 1980). Having done so, we find ample support for the trial court's ruling of admissibility.

## IV. CROSS-APPEAL

Turning now to the cross-appeal, when the indictments in each case were filed, the state alleged that the appellant committed the crimes while he was on probation, parole, work furlough, or any other release in Cochise County Cause Nos. 9841 and 9845, as to CR–10338 and in Cochise County Cause No. 9845 as to Cr–11135. A.R.S. § 13–604.01(B). The three priors alleged were convictions in these two Cochise County cases. The judgments and sentences show that in Cause No. 9841 the appellant was given concurrent sentences, the longest being for five years and three months. In No. 9845 he was sentenced to ten years, concurrent with the sentence in No. 9841. The sentences commenced about November 11, 1978.

After the jury returned their verdicts, the allegation of priors and the allegation that the offenses were committed while on release were tried to the jury. The jury found all of the allegations to be true. However, as to the allegation that the March 1983 offenses were committed while he was on release, the trial court set aside the jury finding, apparently because he found the evidence insufficient to support the finding. Therefore the appellant was not sentenced pursuant to A.R.S. § 13–604.01(B). This ruling is the subject of the cross-appeal.

The statute provides:

"B. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense not included in subsection A of this section if committed while the person is on probation for a conviction of a felony offense or parole, work furlough or any other release from confinement for conviction of a felony offense shall be sentenced to a term of not less than the presumptive sentence authorized for the offense, and the person is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until the sentence imposed by the court has been served. A sentence imposed pursuant to this subsection shall revoke the convicted person's release and shall be consecutive to any other sentence from which the convicted person had been temporarily released, unless the sentence from which the convicted person had been paroled or placed on probation was imposed by a jurisdiction other than this state." A.R.S. § 13–604.01(B) (1984–85 Supp.)

Since the appellant was given the presumptive sentence, the length of the sentences would not be increased by application of the statute. However, if the statute is applicable, the sentences would have to be consecutive to the Cochise County sentences and the appellant would not be eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough, or release from confinement on any other basis, except as specifically authorized by A.R.S. § 31–233, subsection A or B, until the sentences imposed had been served.

With this background we turn to an examination of the trial court proceedings with regard to this issue. The allegations of the priors and the appellant's status at the time of the instant offenses were tried together. The prosecution called as a wit-

ness Leo Henke, a work furlough supervisor for the Department of Corrections. He testified that he supervised the southern Arizona work furlough program to which the appellant was assigned. At that point the appellant objected, arguing that it was necessary for the state to prove that regulations had been adopted for work furlough, citing *Thomas v. Arizona State Board of Pardons and Paroles*, 115 Ariz. 128, 564 P.2d 79 (1977). The court overruled the objection, stating that the matter would be reconsidered at a supplemental hearing with written memoranda.

Further testimony of Mr. Henke then established that the appellant went on work furlough in January 1982, and was still on that status all of March 1983, when the offenses were committed. Two exhibits were admitted during his testimony. Exhibit 28 was a work furlough authorization notifying the appellant of the approval of his request for that status and the rules he had to follow. It was signed by the appellant and Leo Henke. It also showed appellant's Department of Corrections number, 393244. Exhibit No. 38 was an authenticated copy of the appellant's D.O.C. records, which consisted of appellant's photograph, fingerprints, and certified copies of his Cochise County convictions. This exhibit also contained the same D.O.C. number. With this evidence, it is not surprising that the jury found all of the allegations to be true beyond a reasonable doubt.

██ We do not believe it was necessary for the state to prove the adoption and filing of the rules and regulations. The evidence is uncontradicted that the appellant was given an early release from a lengthy prison sentence on what he accepted as work furlough status. He cannot now be heard to complain that he should not have been released from prison on that status. In *Thomas*, supra, our supreme court refused to recognize a procedure of the Board of Pardons and Paroles which was not contained in a duly adopted regulation. The case at bench presents no issue concerning the content of the regulations.

The appellant makes no claim that his release was invalid or unlawful. Even if the D.O.C. had not adopted regulations pursuant to A.R.S. § 31–233, and particularly sub-paragraph C thereof, pertaining to work furlough, the appellant is in no position to complain. A.R.S. § 13–604.01 provides for enhanced punishment if the offense is committed while the defendant is on parole "or any other release from confinement...." Cf. *State v. Caldera*, 141 Ariz. 634, 688 P.2d 642 (1984). Even assuming, arguendo, that it was necessary to prove the adoption of regulations, they were proven later when the state responded to the appellant's motion in the post-trial memoranda. We hold that the trial court erred in granting the appellant's motion to vacate the jury verdict on the allegation that the appellant was on release at the time he committed his crimes.

██ This does not, however, end our consideration of the cross-appeal. The appellant contends we are without jurisdiction to consider the cross-appeal because it was untimely. The undisputed record shows that neither party appealed within the 20-day period provided by Rule 31.3, Rules of Criminal Procedure, 17 A.R.S. Subsequently, the appellant moved for permission to file a delayed appeal. Rule 32.1(f). The motion was granted and notice of appeal filed. Pursuant to Rule 31.3(a) the state then filed the cross-appeal. That rule provides that a notice of cross-appeal may be filed within 20 days after service of the appellant's notice of appeal. We hold that the cross-appeal was timely and that we do have jurisdiction. A.R.S. § 13–4032 provides when the state may take an appeal in a criminal case. We believe it may also cross-appeal in each of the situations set forth in the rule. The appellant has cited no authority to the contrary and we have found none. Rule 31.3(a) does not limit the right to cross-appeal. It does not provide that only the defendant may cross-appeal. In fact, A.R.S. § 13–4032(4) specifically provides that the state may cross-appeal on a question of law decided adversely to the state. We understand that provision to

mean that the state may cross-appeal in instances where it would not have a right of direct appeal under the other seven subsections of the statute. Implicitly it has a right to either appeal or cross-appeal in these other seven situations. Logic dictates this result. If we were to adopt the appellant's reasoning, then once the defendant has appealed, the state could never appeal under subsections (1) through (3) or (5) through (8) because it would not be an appeal but rather a cross-appeal. Nor would it make any difference that the state's cross-appeal might be filed within the time allowed for a direct appeal. Such a holding would probably result in some undesirable gamesmanship. A defendant concerned with the possibility of an appeal by the state might wait until the last minute to file his appeal, hoping the state would then be outside the twenty days for direct appeal. Or a defendant with a similar concern might not file within the twenty days, taking a chance that a motion to file a delayed appeal would be granted.

 The appellant next contends that this cross-appeal is presumptively vindictive. Pointing to the dissent in *State v. Rumsey*, 130 Ariz. 427, 636 P.2d 1209 (1981), the appellant argues that giving the state a right to cross-appeal would have a chilling effect on the appellant's right to appeal. This view was rejected by the majority of the court. We are not persuaded that this cross-appeal is either presumptively or actually vindictive. If the sentence imposed was illegal, as we have found it to be, then the modified sentence will be in accordance with the legislative mandate found in A.R.S. § 13–604.01. A cross-appeal which seeks only to correct an illegal sentence cannot be found to be vindictive. Cf. *United States v. Barker*, 681 F.2d 589 (9th Cir.1982) (holding that upon withdrawal of a guilty plea, the original charges could be reinstated).

We modify the appellant's sentence to provide that the concurrent sentences pronounced are to be consecutive to the appellant's sentences in Cochise County Cause Nos. 9841 and 9845, and his release from confinement in those cases is revoked and he shall not be eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough, or release from confinement on any other basis except as specifically authorized by A.R.S. § 31–233, subsection A or B until the sentences imposed by the trial court, as so modified, have been served.

Affirmed as modified.

HOWARD and FERNANDEZ, JJ., concur.