747 P.2d 560

**STATE of Arizona,
Appellee/Cross-Appellant,**

v.

**Sandra Diane REID,
Appellant/Cross-Appellee.**

**No. CR 86–0213–AP.**

Supreme Court of Arizona,
In Banc.

Dec. 17, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, David S. Ellsworth,

Yuma Co. Atty. by Philip L. Hall, Deputy Yuma Co. Atty., Yuma, for appellee/cross-appellant State.

John H. Jongeward, Jr., Yuma, for appellant/cross-appellee Reid.

CAMERON, Justice.

## I. JURISDICTIONAL STATEMENT

Sandra Reid, defendant, appeals a verdict and judgment of guilt for the crime of first-degree murder. The state cross-appeals. We have jurisdiction pursuant to Ariz. Const. art. 6 § 5(3) and A.R.S. §§ 13–4031, –4032(4) and –4033.

## II. ISSUES

We must answer the following issues:
1. Was the defendant entitled to an instruction on intoxication?
2. Did the trial court err in refusing to give a manslaughter instruction?
3. Was the defendant prejudiced when the trial court proceeded with an eleven person jury?
4. Did the trial court err in giving an instruction on self-defense?

## III. FACTS

Around 2:00 a.m. on 16 October 1985, Somerton police officers were called to a house trailer owned by Lewis Trimble. Trimble was found in his bed with a fatal gunshot wound to the head. He was holding a hand gun. Defendant, Trimble's daughter, lived in the same trailer with Trimble and her fiancé James Warnes,[1] a co-defendant in the case. Warnes' sister, Betty, was also staying at the trailer that night.

Defendant, Warnes, and Betty all told the police that Trimble's death was a suicide. Further investigation revealed that there were two gunshot wounds to Trimble's head, which ruled out suicide. As a result of police interrogation, Betty made a statement inculpating defendant in Trimble's murder. Defendant was indicted for the crimes of first-degree murder, A.R.S. § 13–1105(A)(1), and hindering prosecution, A.R.S. § 13–2512.

At trial, evidence indicated that defendant killed Trimble while he was asleep. Defendant's main defense centered around fear of the victim accentuated by a long history of physical and sexual abuse and violent and psychotic acts by the victim towards the defendant and others. Additionally, defendant also testified that she could detect a change in personality when one of the victim's fits of violence was approaching. This evidence was contradicted by other family members.

Defendant also indicated that at the time of the killing, she was under the influence of drugs and alcohol. Defendant testified that she had been drinking at a local bar and at the victim's trailer. Additionally, throughout the day, defendant had ingested a central nervous system stimulant "Ritalin," and "Parnate," an anti-depressant, in excess of the prescribed dosage. Betty also testified that the defendant had been drinking throughout the day. Defendant, according to her own testimony, however, remembered: (1) every detail of the night she shot her father; (2) feelings of hysteria she felt after shooting the victim; and (3) details of the police arrival and discovery of the body. Defendant also testified that she stayed awake for two and a half hours after her father had gone to bed (and had fallen asleep) before making a search of the victim's bedroom for the gun with which she used to kill him.

After submission of the case to the jury, the foreman reported that one of the jurors was ill and could not continue. The court determined that the juror would not be able to return and, upon stipulation of counsel, allowed the jury to deliberate with eleven jurors. The jury found defendant guilty of first-degree murder. Defendant appeals.

## IV. INSTRUCTION ON INTOXICATION

Defendant first claims the trial court erred by not giving defendant's proposed

---

1. Warnes was acquitted of first-degree murder. The jury convicted him of two counts of hindering prosecution.

instruction on intoxication which would have allowed the jury to find that defendant lacked the specific intent to commit first-degree murder. We disagree.

■ The court must give, when requested, an instruction on any theory supported by the evidence. *State v. Dean*, 129 Ariz. 17, 18, 628 P.2d 54, 55 (App.1981). If, however, the facts of the case do not support the giving of an instruction, it is error to give it. *State v. Cruz–Mata*, 138 Ariz. 370, 373, 674 P.2d 1368, 1371 (1983).

■ In this case, the recitation of facts on the night in question by the defendant and trial testimony indicate that defendant's mental condition was not impaired by alcohol or drugs when the critical events occurred such that an intoxication instruction would have been warranted. *State v. LaGrand*, 152 Ariz. 483, 487, 733 P.2d 1066, 1070 (1987). We find no error.

## V. MANSLAUGHTER

■ Defendant claims it was error not to give a manslaughter instruction. Defendant admits that the facts of the case are not those which traditionally support a manslaughter instruction. However, defendant contends that due to the victim's prior violent acts toward the defendant, the defendant's passion was sufficiently aroused to mitigate a first-degree murder charge to manslaughter.

Our statute reads:

**§ 13–1103. Manslaughter; classification**

A. A person commits manslaughter by:
1. Recklessly causing the death of another person; or
2. Committing second degree murder as defined in § 13–1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim;

A.R.S. § 13–1103(A)(1) and (2). To be entitled to a manslaughter instruction under subsection A of § 13–1103, defendant should have presented evidence of a reckless killing under A.R.S. § 13–1103(A)(1), or a killing "upon a sudden quarrel or heat of passion resulting from adequate provo-

cation by the victim" as set forth in A.R.S. § 13–1103(A)(2). *State v. Reffitt*, 145 Ariz. 452, 463, 702 P.2d 681, 692 (1985). We believe that the evidence was insufficient to support a finding that the killing was reckless. The fact that the victim was shot twice while asleep would negate such a finding.

■ Neither do we believe the killing took place in the heat of passion or that there was adequate provocation by the victim. Whatever might have occurred before the victim retired for the evening is immaterial because the defendant waited two and a half hours before shooting him. The evidence presented no sudden quarrel between the victim and the accused. Neither was there any evidence that the victim provoked the accused. From testimony at trial, evidence was insufficient to indicate that the killing occurred in the heat of passion or immediately after a quarrel. The trial court did not err in refusing the instruction.

## VI. JURY MISTRIAL

After the jury had deliberated for four hours, one of the jurors was taken ill. After several conferences, the following took place:

THE COURT: As you see, Mrs. Little is still not with us. In fact, after a mental hearing at the hospital I stopped by her room and she's still there waiting to see Dr. Johns. So Mr. Jongeward, have you had an opportunity to talk to your client?

MR. JONGEWARD: Yes, sir. Both Mr. Nelson and I have discussed the matter with our clients and we are willing to present the case to all 11-person jury by stipulation.

MR. NELSON: That is correct. We will waive the 12 jurors.

THE COURT: Mr. Hall?

MR. HALL: The State has no objection to that stipulation. We'll join in.

THE COURT: All right. Under all the circumstances, then we'll proceed with the 11-member jury. You may resume your deliberations at this time.

Defendant claims error in the trial court's decision to proceed with an eleven-person jury after one of the jurors became ill. Defendant relies on Ariz.R.Crim.P. 18.1 which reads:

Trial by Jury

a. By Jury. The number of jurors required to try a case and render a verdict shall be provided by law.

b. Waiver. The defendant may waive his right to trial by jury with consent of the prosecution and the court.

1) Voluntariness. Before accepting a waiver the court shall address the defendant personally, advise him of his right to a jury trial and ascertain that the waiver is knowing, voluntary, and intelligent.

2) Form of Waiver. A waiver of jury trial under this rule shall be made in writing or in open court on the record.

The defendant contends that the waiver of a twelve-person jury must be made in the same manner as waiver of a jury trial. We have held that a waiver of a twelve-person jury for an eight-person jury must be made in the same manner as the waiver of a jury itself. *State v. Prince*, 142 Ariz. 256, 258, 689 P.2d 515, 517 (1984). As to the waiver of a twelve-person jury for a lesser member jury after trial has commenced, we have stated:

During the course of the trial, one of the original twelve jurors became ill and was unable to sit on the case. This was on a Friday. The juror indicated to the court that he would be able to return Monday to continue the trial.

When asked if he would stipulate to a trial by eleven jurors, defense counsel stated he would have to discuss the matter with the defendant. The defendant told his attorney that he, in fact, agreed to proceed with eleven jurors.

The court, wanting to be certain that the defendant personally assented to this action, asked the defendant in open court if he agreed to this. The court stated that the matter could be continued until Monday if the defendant did not agree. The defendant responded that he did agree.

*State v. Lockett,* 107 Ariz. 598, 599, 491 P.2d 452, 453 (1971).

 The better practice in this case would have been for the judge to address the defendant and ascertain that the defendant personally waived the twelve-person jury for an eleven-person jury. Failure to do so, however, was not fatal under the facts in this case. Consent after deliberations have commenced to receive a verdict concurred in by a lesser number of jurors does not require the same formality as the waiver of a jury itself. This is not the same as a waiver of a jury under Ariz.R. Crim.P. 18.1. *Lockett* at 600, 491 P.2d at 454.

In the instant case, the record shows that the defendant had been informed of the right not to waive the twelve-person jury by defendant's attorney and that the defendant was present in court when her counsel stipulated to continue with eleven jurors. We note also that the defendant does not allege that she did not discuss the matter with her counsel nor that she did not in fact agree with counsel. Admittedly as we have noted, the better practice would have been for the court to address the defendant personally and obtain her express concurrence. Under the circumstances, however, failure to do so was not fatal. We find no error.

## VII. SELF–DEFENSE

 The state cross-appealed [2] claiming that the trial court erred in instructing the jury on self-defense. By statute a person is:

... justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is *immediately* necessary to protect himself against the other's use or attempted use of unlawful physical force.

*Webb,* 149 Ariz. 158, 166–67, 717 P.2d 462, 470–71 (App.1985).

---

**2.** The state may cross appeal from an adverse ruling when the defendant has been convicted and appealed. A.R.S. § 13–4032(4), *State v.*

A.R.S. § 13–404(A) (emphasis added). Thus, to determine whether a self-defense instruction was required, we look to evidence of threats of future harm, even if the evidence is in conflict on this issue, and to any other evidence that might support a claim of self-defense. *State v. Noriega,* 142 Ariz. 474, 482, 690 P.2d 775, 783 (1984). As this court has stated, the slightest evidence will mandate an instruction on this issue. *Id.* An instruction on self-defense must be given if an accused shows that:

> 1) the defendant reasonably believed that he or she was in *immediate* physical danger; 2) the defendant acted solely because of this belief; and 3) the defendant used no more force than appeared reasonably necessary under the circumstances.

*Id.* at 482, 690 P.2d at 783 (emphasis added).

◼ The state maintains that since the victim was asleep, the *immediacy* of physical danger did not exist. The defendant maintains, however, that she reasonably believed she was in immediate physical danger. We consider the use of the word "immediate" as addressed by the Kansas Supreme Court, in which it stated in a battered wife case:

> ... "immediate", in the instruction on self defense places undue emphasis on the immediate action of the deceased, and obliterates the nature of the buildup of terror and fear which had been systematically created over a long period of time.

*State v. Hundley,* 236 Kan. 461, 467–68, 693 P.2d 475, 479 (1985). However, even considering the events of the evening, we do not find sufficient evidence to show defendant was in immediate danger. In a Washington case, the court held the instruction given by the trial court which narrowed the focus of the inquiry to the time immediately before the shooting was impermissible since it restricted the jury's inquiry into the surrounding circumstances. *State v. Wanrow,* 88 Wash.2d 221, 236, 559 P.2d 548, 556 (1977). Hence, knowledge of the victim's violent reputation in some circumstances may warrant a deviation from the normal use of the self-defense instruction. Even if we were to hold that a history of battering and brutalizing could be a factor in supporting the instruction of self-defense, *see generally, Jahnke v. State,* 682 P.2d 991 (Wyo.1984), the facts in the instant case do not rise to that level. Even though the victim may have been capable of violence towards the defendant, we do not find that the facts indicate a reasonable fear in the mind of defendant to warrant an instruction on self-defense. The trial court improperly instructed the jury on self-defense.

## VIII. HOLDING

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035 and *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and have found none. Defendant's conviction for first-degree murder is affirmed.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.