852 P.2d 1251

**The STATE of Arizona, Appellant/Cross– Appellee,**

v.

**Billie GROSHONG, Appellee/Cross– Appellant.**

**No. 2 CA–CR 92–0775.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 25, 1993.

Review Denied June 15, 1993.

Richard M. Romley, Maricopa County Atty. by Arthur Hazelton, Phoenix, for appellant/cross-appellee.

Miller & Miller, Ltd. by Richard K. Miller, Phoenix, for appellee/cross-appellant.

## OPINION

FERNANDEZ, Judge.

Appellee Billie Groshong was charged with manslaughter, a class three felony, after he was involved in an automobile accident, allegedly while intoxicated, which resulted in the death of the driver of another vehicle. The state appeals from the trial court's granting of Groshong's motion to suppress three blood samples. In his cross-appeal, Groshong challenges the trial court's denial of his motion to dismiss the

charge because of prosecutorial miscon-duct.[1]

ruling that it was sufficient. We do not reweigh the evidence on appeal.

## SUPPRESSION OF BLOOD SAMPLE #1

 At the evidentiary hearing on Groshong's motion to suppress, Glendale Police Officer Scheckel testified that when he arrived at the scene of the accident, Groshong smelled of alcohol and his eyes were watery and bloodshot. Scheckel asked the paramedics treating Groshong to draw a blood sample for him if the par-amedics were going to draw blood for med-ical purposes. The paramedic told the offi-cer he did intend to draw blood for hospital use and then handed Scheckel a vial of Groshong's blood. It is undisputed that Groshong was not under arrest at the time. Relying on *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986), and *State v. Kemp*, 166 Ariz. 339, 802 P.2d 1038 (App.1990), the trial court suppressed the sample, finding that although "[t]he greater weight of the evidence ... shows that this sample was drawn for medical purposes by medical personnel" pursuant to A.R.S. § 28–692(J), Groshong had not been advised of his right to obtain a portion of that blood as required both before ar-rest, *Kemp*, and after arrest, *Montano*.

The state argues that the court's ruling must be reversed because *Kemp* was va-cated by the supreme court, which held that the constitution does not require a prearrest suspect to be advised of the right to retain a sample of his or her own when a sample is collected under § 28–692(J) and properly stored. *State v. Kemp*, 168 Ariz. 334, 813 P.2d 315 (1991). We agree. Al-though the trial court relied on the law applicable at the time, we cannot ignore the fact that the decision on which it relied has since been vacated. It is no longer the law.

We find no merit to Groshong's argu-ment that the evidence was insufficient to show compliance with the statutory re-quirements and that the trial court erred in

## SUPPRESSION OF BLOOD SAMPLES #2 and #3

Officer Stockton testified that he contact-ed Groshong at the hospital and, based on information he had obtained from Officer Scheckel and from what he observed re-garding Groshong's possible intoxication, decided he wanted a blood sample. The officer then asked hospital personnel to draw two samples. Personnel refused ini-tially because they did not need to draw blood for medical purposes. According to Officer Stockton, however, Groshong was willing to give a blood sample voluntarily. The officer testified that he told Groshong he was not under arrest, read him his *Mi-randa* rights "as a precaution," and told him he wanted to have blood drawn to determine if his blood alcohol content ex-ceeded the legal limit, "at which time he indicated that he would give me a blood sample." The officer stated that he did not threaten Groshong or tell him there would be any consequences if he refused and that it was entirely up to him whether to pro-vide the sample. The officer stated that he told Groshong two samples would be taken; one would be tested and the other kept in the event Groshong and any attorney rep-resenting him wanted it for independent testing.

After a prosecutor from the Maricopa County attorney's office advised the hospi-tal that Groshong was willing to give the samples, the staff agreed to draw the blood. A technician drew two samples and gave them to Officer Stockton, who re-turned them to the Glendale Police Depart-ment to be retained in cold storage. No samples were kept for hospital use. An-other sample was drawn approximately an hour and one-half later because the prose-cutor, who by this time was at the hospital, wanted a reading of any change in the blood alcohol level. Again, two vials were taken and the police retained both.

---

1. The trial court granted the state's motion to dismiss the case without prejudice in light of the

state's intent to appeal the suppression order.

In granting the motion to suppress the two samples, the trial court ruled as follows:

> While I conclude from Officer Stockton's testimony that he twice advised the defendant of his right to have his own portions of the two blood draws subsequently performed at the hospital, it is also clear from the evidence that both of these procedures were at the request, if not insistence, of law enforcement for purposes of law enforcement and not for medical purposes, as required by A.R.S. § 28–692(J) as interpreted. The defendant's consent does not change the outcome. *State v. Brita,* 158 Ariz. 121, 761 P.2d 1025 (1988); *State v. Cocia* [sic], 147 Ariz. 277, 709 P.2d 1336 (1985).

We agree with the state that the trial court erroneously "disregarded" Groshong's consent to provide blood samples # 2 and # 3.

■ Section 28–692(J) provides law enforcement officers with a means of gathering evidence without a warrant when a person is suspected of, but not necessarily arrested for, driving while under the influence of alcohol. Recognizing the evanescent nature of alcohol, the statute permits the evidence gathering without impinging upon the person's rights under the fourth amendment to the United States Constitution and article II, § 8 of the Arizona Constitution in accordance with *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Section 28–692(J) differs from § 28–691, which applies after a person has been arrested and relates to the fact that all persons issued a driver's license are presumed to consent to providing samples of blood, breath, or urine. Because Groshong was not arrested, § 28–691 simply does not apply here.

■ In *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336 (1985), our supreme court considered the constitutionality of a prearrest, warrantless taking of a blood sample pursuant to § 28–692(M), now § 28–692(J). The court found that although a formal arrest is not necessary for the taking to be constitutional under *Schmerber,* the statute requires probable cause to believe the suspect was driving while under the influ-

ence of alcohol or with a blood alcohol level above .10 per cent in violation of § 28–692(A) or (B), the presence of exigent circumstances, and the drawing of the blood for medical purposes. In addition to the protection of probable cause, one of the bases for the conclusion that such a search or seizure is not unreasonable is that any additional intrusion on the person's body is minimal because hospital personnel are already taking a sample. *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *State v. Cocio.*

It is unreasonable, however, to construe § 28–692(J) as providing the exclusive constitutional means of obtaining a prearrest sample of blood when a person is suspected of driving while intoxicated and, as here, of other crimes. Obviously, this provision contemplates only the warrantless taking of blood. Presumably a blood sample can also be obtained outside the statute if a warrant issues, as trial counsel pointed out to the court during argument on the motion to suppress. Thus, in a case such as this, when the person is suspected of driving while intoxicated but a death occurs possibly resulting in a "criminal offense punishable by at least one year in the state prison," A.R.S. § 13–3905, a blood sample can also be obtained pursuant to an order issued under that statute. The statute provides for the temporary, prearrest detention of an individual for the purpose of obtaining evidence of identifying physical characteristics. Formerly A.R.S. § 13–1424, the provision has been held not to violate the fourth amendment. *State v. Grijalva,* 111 Ariz. 476, 533 P.2d 533, *cert. denied,* 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975).

■ An alternative to a search or seizure by warrant is one by consent, 2 W. LaFave, *Search and Seizure* § 8.1, at 611 (1978), an exception to the general rule that a search or seizure is per se unreasonable if it is effected without a warrant. *State v. Hill,* 136 Ariz. 347, 666 P.2d 92 (App.1983). In addition to the taking of blood samples pursuant to a warrant or other court order, we also believe that, like other searches or seizures, a blood sampling is constitutional

if it is consensual. Groshong maintains, and the trial court apparently agreed, that in that portion of *State v. Brita*, 154 Ariz. 517, 744 P.2d 429 (App.1987), which the supreme court approved, 158 Ariz. 121, 761 P.2d 1025 (1988), Division One concluded that consent is irrelevant when blood is obtained under § 28–692(J) and that unless the blood is drawn for medical purposes, it cannot be used as evidence. A closer reading of that case and *Cocio*, upon which Groshong also relies, shows, however, that they are distinguishable.

In *Brita*, the defendant signed the implied consent form pursuant to § 28–691; the court held the consent was inapplicable because he was not under arrest. In any event, the defendant stated that he signed it because he believed he would lose his driver's license if he did not. In *Cocio*, the sample was simply taken for medical purposes and a portion was given to police. Consent was not an issue.

Groshong has never maintained that he did not consent to the drawing of his blood or that the consent was the result of threats or other pressure. Officer Stockton's unchallenged testimony was unequivocal that Groshong consented after he was told he was not required to provide the sample and the purpose for which it would be used. The trial court implicitly viewed Groshong's statements as an actual consent but, relying on *Cocio* and *Brita*, agreed with Groshong that consent simply is irrelevant when blood is obtained under A.R.S. § 28–692(J). The blood was not obtained through § 28–692(J), however, but through Groshong's consent. We conclude, therefore, that the trial court erred in suppressing the blood samples. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982).

## CROSS–APPEAL

■ In his cross-appeal, Groshong challenges the trial court's denial of his motion to dismiss the indictment on the ground that the prosecutor served a search warrant on the hospital to obtain Groshong's medical records after he had asserted the physician-patient privilege under A.R.S. § 13–4062(4). That statute provides as follows:

A person shall not be examined as a witness in the following cases:

\* \* \* \* \* \*

(4) A physician or surgeon without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

*See also State v. Superior Court*, 142 Ariz. 375, 690 P.2d 94 (App.1984) (production of defendant's medical records for determination of blood alcohol level precluded).

The record shows that the state filed a motion for disclosure after Groshong's counsel told the prosecutor that Groshong would not produce his medical records because they were privileged. The records were then obtained through an ex parte search warrant. The state contends that its conduct did not intentionally violate Groshong's rights but was instead the result of a police officer's acting hastily in having a warrant issued and served when the prosecutor had asked only for a draft of a warrant. The trial court suppressed the records but denied the motion to dismiss.

The trial court has discretion whether to dismiss a case because of prosecutorial misconduct. *Crimmins v. Superior Court*, 137 Ariz. 39, 668 P.2d 882 (1983). We agree with the trial court that the proceedings employed here were highly improper and pose serious risks to Groshong's sixth amendment right to counsel. We also agree, however, that the trial court's ruling suppressing the records is a reasonable resolution of the matter. We note that all the events involved occurred before trial. Thus, any actual prejudice to Groshong in connection with his defense has been avoided by the court's ruling. Under the circumstances, and particularly in light of the trial court's finding that the state did not intend to violate Groshong's rights, we cannot say that the court abused its discretion in denying the motion to dismiss.

The trial court's order suppressing blood samples # 1, # 2, and # 3 is reversed. The denial of Groshong's motion to dismiss is affirmed.

DRUKE, P.J., and HATHAWAY, J., concur.