638 P.2d 696

**STATE of Arizona, Appellee,**

v.

**Joseph Clarence SMITH, Jr., Appellant.**

No. 4021-2.

Supreme Court of Arizona,
In Banc.

Dec. 7, 1981.

Rehearing Denied Jan. 12, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Stephen M. R. Rempe, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

Joseph Clarence Smith, Jr. was convicted of two counts of first degree murder and received the death penalty. He appealed, and we affirmed his convictions but remanded for resentencing in light of our holding in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). See *State v. Smith*, 123 Ariz. 231, 243, 599 P.2d 187 (1979). After another aggravation/mitigation hearing, the death penalty was again imposed and this appeal followed. Affirmed.

Appellant questions the constitutionality of Arizona's death penalty statute. He asserts that the death penalty statute was improperly modified by this Court in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and that the lower court's subsequent resentencing of him to death: (1) violated the double jeop-

ardy clause of the Fifth Amendment; (2) is illegal in light of Chapter 138, Laws of 1973 § 10; and (3) constitutes an ex post facto application of the law. All of these issues have been resolved adversely to appellant on numerous occasions. We find it unnecessary to reconsider them at this time. See *State v. Greenawalt*, 128 Ariz. 150, 174, 624 P.2d 828 (1981); *State v. Mata*, 125 Ariz. 233, 241, 609 P.2d 48, *cert. denied*, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980); *State v. Arnett*, 125 Ariz. 201, 202, 608 P.2d 778 (1980); *State v. Jordan*, 126 Ariz. 283, 286, 614 P.2d 825, *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); and *State v. Watson*, supra. No compelling reason has been advanced which would cause us to conclude that we erred in our prior decisions.

Appellant also asserts that the imposition of the death penalty was improper because there was evidence sufficient to establish that his capacity "to conform his conduct to the requirements of law was significantly impaired, [although] not so impaired as to constitute a defense to the prosecution." See A.R.S. § 13–454(F)(1), now A.R.S. § 13–703(G)(1).

At the first aggravation/mitigation hearing, appellant presented the testimony of Dr. Faye G. Goldberg and Dr. Jacob Hoogerbeets to establish the existence of the mitigating factor specified in A.R.S. § 13–454(F)(1). At the second aggravation/mitigation hearing, neither the State nor appellant produced additional evidence of the existence of aggravating or mitigating circumstances. Both relied upon the evidence introduced at the first hearing. The lower court again found that there was an absence of any mitigating circumstances which would justify a reduction from the death penalty.

The court below found three of the aggravating circumstances set forth in A.R.S. § 13–454(E) (now § 13–703(F)) in the murder of Neva Lee, as follows:

"1. The Defendant has been convicted of other offenses in the State of Arizona for which a sentence of life imprisonment or death was imposable.

FINDING: The Court finds that this circumstance does exist.

(a) The Defendant has been convicted of the following felonies in this Court for which life imprisonment was imposable:

(1) CR 77216, Rape, a Felony,

(2) CR 77394, Rape, a Felony,

(3) CR 92168, Rape, First Degree, a Felony. The Court has personally reviewed the files in these causes and has considered Exhibit 1 (July 29, 1977) in Evidence.

(b) In addition, the Defendant has been convicted of Murder, First Degree of Sandy Spencer as set forth in Count I of the Indictment in this cause, for which a sentence of life imprisonment or death is imposable.

2. The Defendant was previously convicted of felonies in the State of Arizona involving the use of violence on another person.

FINDING: The Court finds this circumstance does exist. The finding under Paragraph 1(a) herein is incorporated as though fully set forth.

＊　　＊　　＊　　＊　　＊　　＊

6. The Defendant committed the offense in an especially heinous, cruel, or depraved manner.

FINDING: The Court does find this circumstance to exist.

The victim Neva Lee was a 14 year old girl. The Defendant murdered her by forcing dirt into her mouth, larynx, the voice box, the trachea, the windpipe and the periphery of the bronchiolo of both lungs. She died of suffocation or asphyxiation due to obstruction of the airway by soil. Miss Lee also sustained a stab wound 1 inch long penetrating 1 inch at the left side of the vulva just at the entrance into the vagina. There were several tears in the area of the left and right vulva; and a tear in the posterior wall of the vagina. These wounds were inflicted ante mortem, or before death. (Miss Lee sustained many other wounds which were ante mortem, peri mortem and post mortem.)"

As to the murder of Sandy Spencer, the court found the aggravating circumstances set forth in A.R.S. § 13–454(E) (now A.R.S. § 13–703(F)) to be:

"1. The Defendant has been convicted of other offenses in the State of Arizona for which a sentence of life imprisonment or death was imposable.

FINDING: The Court finds that this circumstance does exist.

(a) The Defendant has been convicted of the following felonies in this Court for which life imprisonment was imposable:

(1) CR 77216, Rape, a Felony,

(2) CR 77394, Rape, a Felony,

(3) CR 92168, Rape, First Degree, a Felony. The Court has personally reviewed the files in these causes and has considered Exhibit 1 (July 29, 1977) in Evidence.

(b) In addition the Defendant has been convicted of Murder First Degree of Neva Lee as set forth in Count II of the Indictment in this cause, for which a sentence of life imprisonment or death is imposable.

2. The Defendant was previously convicted of felonies in the State of Arizona involving the use of violence on another person.

FINDING: The Court finds this circumstance does exist. The finding under Paragraph 1(a) herein is incorporated as though fully set forth.

\* \* \* \* \* \*

6. The Defendant committed the offense in an especially heinous, cruel, or depraved manner.

FINDING: The Court does find this circumstance to exist.

The victim Sandy Spencer was an 18 year old girl. The Defendant murdered her by forcing dirt into her mouth and nose. She died of suffocation or asphyxiation due to obstruction of the breathing passage. Miss Spencer also sustained 19 to 20 stab wounds in the groin and pelvic area. The stab wounds included stab wounds in both breasts and a 2–¼ inch sewing needle was embedded in Miss Spencer's left breast and chest wall. All of these wounds were inflicted ante mortem or before her death."

The court also found there were no mitigating circumstances in both homicides. It explained that it was not relying on the testimony of the State's psychiatrist, Dr. Michael Cleary, but was basing its finding solely on the fact that the evidence presented by appellant did not establish the existence of impaired capacity:

"I think the testimony of Dr. Hoogerbeets and Dr. Goldberg simply don't rise to a point where they need rebuttal so I am not considering Dr. Cleary's testimony on that basis."

In appellant's first appeal we held that "there was sufficient evidence adduced through Dr. Cleary's testimony to support the trial court's determination that the defendant could appreciate the wrongfulness of his acts or could conform his conduct to the requirements of law." *State v. Smith*, 123 Ariz. 231, 242–43, 599 P.2d 187 (1979). Appellant now argues that since this Court, in deciding his first appeal, relied upon Dr. Cleary's testimony to reject his argument that his capacity to conform to the requirements of law was significantly impaired, our conclusion must now be that the lower court erred in finding there was no mitigating circumstance requiring leniency. We disagree.

■ At the outset, it should be pointed out, as we have so many times held, that in reviewing imposition of the death penalty we will conduct an independent examination of the record to determine whether the death penalty was properly imposed. See *State v. Britson*, 130 Ariz. 380, 636 P.2d 628 (1981).

■ Dr. Jacob B. Hoogerbeets, a physician licensed in the State of Arizona, an associate professor of psychiatry at the University of Arizona Medical School, College of Medicine, and board certified by the American Board of Psychiatry and Neurology, testified that appellant was able to as-

sist counsel and knew right from wrong. He also testified:

"Q. * * * could you give your impressions as to Joe Clarence Smith as to whether he would, in your opinion, be mentally ill?

A. It's my opinion that he is mentally disturbed, yes.

\* \* \* \* \* \*

I feel that Mr. Smith fills more the category of a, I would say almost a border-type psychotic person, with an abnormal psycho-sexual development, very strong neurotic traits, as I stated, almost bordering on psychotic traits, which drives him to compulsory aberrant actions. Unfortunately, often highly deviant and violent of nature.

\* \* \* \* \* \*

Q. So you were familiar with the type of the deaths of each girl were committed, the suffocation by stuffing dirt in their mouths and stabbing repeatedly in the pubic area and the breast area?

A. I was familiar with that, yes.

Q. Would that type of killing itself be any indication of any kind of mental disorder?

A. Not absolutely necessarily so.

\* \* \* \* \* \*

Q. * * * 'would his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired but not so impaired as to constitute a defense to prosecution. Such as definite insanity defense.

Do you think that he would be such a situation where he wouldn't be able to conform his conduct because of—he was any way significantly impaired because of his mental disorder?

A. * * * I think this man was compulsion—in a compulsionary manner driven to commit a series of acts which are based on very disturbed-type of psychodynamics, inner conflicts.

\* \* \* \* \* \*

Q. Excuse me, may I clarify that? You say there was never any question in your mind that he was mentally disturbed?

A. Disturbed, but not in the terms that I would declare him suffering from a major psychiatric disability or a psychosis. * * *

\* \* \* \* \* \*

* * * I would classify him as [a] mentally disturbed person, although not of psychotic dimensions."

Dr. Faye G. Goldberg has a Bachelor's Degree in Psychiatry from Temple University, a Master's Degree from Boston University, and a Doctorate from Harvard, and is currently on the faculty of the Department of Psychiatry at the University of Chicago. She examined appellant ten days before and in response to questioning answered:

"Currently Mr. Smith appears to be— to me to be well compensated. That is, his intellectual functioning is in the bright normal range with potential for perhaps superior functioning.

\* \* \* \* \* \*

Frequently the borderline individual in the period of compensation has test results that look like most other people's."

Dr. Goldberg classified the appellant as a sadistic sexual slayer, stating:

"The description in the literature of the multiple sadistic sexual slayer is very unique. Almost all of the literature that deals with this subject describes the kind of profile that would be consistent with what we know about Mr. Smith."

She stated that her psychological test-work supported the "possibility" that appellant "is a psychotic personality", "the kind of personality that fluctuates between good reality testing and very poor ego control which results in the explosive kind of episodes." Her answers to questions on cross-examination, among others included the following:

"Q. I believe you testified before that this person would know that what he was doing was wrong but he couldn't feel it applied to him?

A. That is what I read from Dr. Brittain's article, right.

Q. So that if Joe Smith took Neva Lee and Sandy Spencer out to the desert somewhere and then set about to kill them he would know it would be wrong but as far as he was concerned it doesn't apply to him, he is above all that stuff?

A. That is one way of characterizing it. There are other articles that characterize it as a compulsive behavior over which the person has little control.

Q. But it is categorized in either he is above all that or he is so obcessed [sic] by what he is doing that he can't control himself, and you don't know which one that is with Mr. Smith, if either?

A. No."

Dr. Goldberg further testified:

"Q. * * * If you take the mere fact that the killings and the manner in which they were done you would assume whoever did it—there has to be something wrong with him?

A. That is unfortunately the reasoning we have to do here, yes.

Q. You weren't told by the defendant that he felt any fury when he killed these two girls at all?

A. No.

Q. You weren't told by the defendant when he was killing these two girls he thought he was killing his mother because he hates his mother?

A. I believe I said before the defendant said nothing about the killings to me.

Q. So it is suppositions that you have come up with that may fit a category of personality?

A. I assume it fits the person convicted of these slayings, yes."

It is apparent that Dr. Hoogerbeets classified appellant more or less as a borderline psychotic person, an emotionally disturbed individual, which drives him to compulsory aberrant actions, and Dr. Goldberg's views were that appellant fitted the profile of a sadistic sexual slayer, that he knew he was doing wrong but that Smith was in a compulsory manner driven to commit a series of acts. We could conclude, if we were compelled to believe the appellant's witnesses, that we would have to say his capacity was sufficiently impaired that he could not conform his conduct to the requirements of law. We are not, however, compelled to do so since the credibility of the expert witnesses is for the trier of fact. *State v. Moore*, 111 Ariz. 496, 497, 533 P.2d 663 (1975). In conducting our independent examination of the evidence to determine whether the death sentence should have been imposed, we adhere to the same rule.

In contrast to the indefinite language of Dr. Hoogerbeets and Dr. Goldberg, extractions from the testimony of Dr. Michael Cleary, a physician certified as a specialist in psychiatry, establishes his unequivocal belief in the appellant's mental stability:

"Q. During the course of your examination did you find any mental illness present in Mr. Smith?

A. My conclusion as a result of my examination was that Mr. Smith had no mental disorder."

"Q. Did you agree with Dr. Hoogerbeets' present position or at least the position he took on July 27, 1977, concerning Mr. Smith and any possibility of a psychiatric defect?

A. No, I did not. I felt Dr. Hoogerbeets' reference to the defendant having a psychiatric disability was incorrect."

"Q. And sir, do you have any description for Mr. Smith or—and—in relation to the murders of Neva Lee and Sandy Spencer, the type of individual that Mr. Smith would be?

A. I reviewed the police departmental reports on those homicides and it was my conclusion that the person who did those killings indulged in a [sic] sadistic acts and that both murders, both homicides, were extremely similar. They showed a desire to inflict pain and a willingness to use various implements such as long needles to inflict pain on the victim, and that they were apparently associated with a sexual assault.

Q. In your examination of Mr. Smith and your examination of the police re-

ports prior to that examination did you find that Mr. Smith acted from any compulsion, acted from any compulsions where he could not control himself when he committed these offenses?

A. My conclusion based on my examination and review of the reports was that the defendant did not suffer from a mental disorder and I did not feel any term like 'compulsion' was appropriate or suitable to the situation.

What I would mean by 'compulsion' would perhaps be different from the term used by another doctor, but in my interpretation of that term he did not have a compulsion, that is, an intense drive which he could not resist or which he could not overcome."

"Q. Doctor, based upon—you heard Dr. Goldbert [sic] testify—

A. Yes.

\*　\*　\*　\*　\*　\*

Q. Based upon her testimony and what she had to say and the citations she gave to the Court, does that change your opinion as to Mr. Smith's mental condition at the time of the offenses?

A. No. I felt again based on an appraisal of him in the jail and assuming that these police reports were referring to him as the one who committed these acts, I would not feel that there was any mental illness or psychiatric disorder present at the time. That was my opinion."

We think the lucid, positive testimony of Dr. Cleary plainly outweighs the inexplicit and often equivocal testimony of the appellant's witnesses. We therefore hold that the psychiatric testimony does not convincingly establish that appellant's capacity to conform his conduct to the requirements of law was significantly impaired.

We have considered the decision in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 1870–77, 68 L.Ed.2d 359 (1981), and find that it has no application to this case. There, without notice to defense counsel, the trial judge ordered a psychiatric examination to determine the defendant's competency to stand trial. During the sentencing phase, the examining psychiatrist testified that the defendant showed no regard for another person's life or property and that he showed no remorse for his crime. The jury found in favor of the death penalty. The United States Supreme Court held that there was a privilege against self-incrimination which applied at the sentencing phase. The Court stated that the availability of the Fifth Amendment privilege turns upon the exposure which it invites, which in that case, because of the potential consequences of the defendant's statements, was the death penalty. Consequently, the state was obliged to observe all constitutional guarantees. That is not the situation here. *Estelle v. Smith*, 451 U.S. 463, 101 S.Ct. at 1873, 68 L.Ed.2d 359.

Prior to the first trial on February 16, 1977, appellant's counsel petitioned the court to appoint two or three impartial medical experts to examine appellant as to his present mental condition, his attorneys then being of the view that appellant was unable to understand the proceedings against him or assist in his defense. Additionally, appellant's attorneys requested the court pursuant to Rule 11.2, Arizona Rules of Criminal Procedure, 17 A.R.S., to appoint an impartial expert to investigate and report on the appellant's mental condition at the time of the alleged offenses. In response to this petition for examination, the court on February 25, 1977 appointed Drs. Michael F. Cleary, Jacob Hoogerbeets and Leonardo Garcia-Bunuel to serve as mental health experts in appellant's case, to examine the mental condition of appellant, report their opinion of the appellant's competency to stand trial, and to further report their opinion as to "[t]he probable mental condition of the defendant at the time he committed the offense."

Since the appellant was examined at his own request, the exposure which was invited was a clear waiver of constitutional guarantees.

■ Nor do we find that the psychiatric testimony offered by appellant constitutes a mitigating factor other than those set forth

in A.R.S. § 13–454(F) (now A.R.S. § 13–703(G)). He does not contend that he is suffering from a character disorder, such as sociopathy or psychopathy, which prior to our decision in *State v. Watson, supra,* was not recognized as a mitigating factor. *Compare State v. Richmond,* 114 Ariz. 186, 197, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), with *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315, 325 (1981). Instead, appellant attempts to establish that he was a borderline psychotic and that his capacity to control his conduct was significantly impaired. As such, our finding on appeal is not that appellant's mental impairment does not constitute a mitigating factor, but that appellant has failed to establish the existence of any mental impairment at all. Since several aggravating factors have been found to be present and no mitigating circumstances sufficient to overcome the aggravating factors, the imposition of the death penalty is proper.

Judgment affirmed.

HOLOHAN, V.C.J., and HAYS, CAMERON and GORDON, JJ., concur.