727 P.2d 31

**The STATE of Arizona, Appellee,**

v.

**Robert Wesley MOYER, Appellant.**

**No. 2 CA–CR 4206.**

Court of Appeals of Arizona, Division 2, Department A.

June 12, 1986.

Review Denied Oct. 21, 1986.

---

**254**

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gerald R. Grant, Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

Appellant was convicted by a jury of one count of child abuse involving his 21-month-old step-daughter, and was sentenced to five years in prison.

On June 14, 1986, Child Protective Services, pursuant to a recommendation of a doctor, referred appellant's step-daughter to Dr. Helen Britton for an examination of burns the child had suffered. The child had second-degree burns on her face and left arm. The doctor concluded that the child's burns and other injuries, including a fractured skull and various bruises, were non-accidental. Bruising was found on the child's inner thighs, a place where bruising is usually not caused by accident. It was also found that the child's weight was low.

On June 20, 1986, police officers interviewed appellant about the child's injuries. Appellant told them he had been at home alone with the child at the time she was burned. He stated that he had left the child in the living room while he was taking a bath. Appellant was using a sun lamp that he had suspended from a shower curtain rod. He stated that as he was sitting in the tub under the lamp, the child came into the bathroom. Shortly thereafter, the phone rang and appellant went to answer it, leaving the child behind. Appellant said that he talked on the phone for several minutes and then began watching television, when he remembered that the child was still in the bathroom and went to check on her. It was at that time he found the child burned.

As a result of these events, the Pima County Grand Jury returned an indictment charging appellant with one count of child abuse. The prosecution added allegations that appellant had two prior felony convictions and that he had committed the instant offense while on probation. The two prior convictions do not involve child abuse or sex crimes with minors.

Prior to trial, the state moved to introduce evidence of "battered child syndrome." The state's witnesses were to be Dr. Britton and Dr. Alan Jones, the Chief Medical Examiner for Pima County. Despite protests from defense counsel that the doctors could not establish a nexus between the observed injuries of the child and defendant, the trial court permitted introduction of the evidence of battered child syndrome. At trial, Dr. Britton testified as did Sally Droban of the Tucson Police Department, who investigated the victim's case. A Child Protective Services investigator, the child's grandfather (who originally took her to the hospital), the child's grandmother and appellant's wife also testified, and appellant testified on his own behalf.

Appellant raises two issues on appeal: (1) the trial court erred in permitting testimony concerning the battered child syn-

drome and (2) appellant was denied effective assistance of counsel.

## I. BATTERED CHILD SYNDROME

The trial court permitted Dr. Britton to testify as to whether appellant's stepdaughter suffered from battered child syndrome (BCS). Battered child syndrome has become an accepted medical diagnosis. *People v. Jackson*, 18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971). BCS is not an opinion by a doctor as to whether any particular person has done anything, but rather simply indicates that a child of tender years found with a certain type of injury has not suffered those injuries by accidental means, but rather is the victim of child abuse. The diagnosis is used in connection with very young children, usually four years of age or younger, who cannot testify themselves. It is based upon a finding that such child exhibits evidence of, among other things, subdural hematoma, fractures in various stages of healing, soft tissue swelling or skin bruising. Also pertinent to the diagnosis is evidence that the child is generally undernourished and that the severity of injuries on his body is inconsistent with the parents' story of their occurrence. *People v. Henson*, 33 N.Y.2d 63, 349 N.Y. S.2d 657, 304 N.E.2d 358 (1973).

■ This sort of expert testimony coupled with additional proof that the injuries occurred while the child was entrusted to the care of the defendant is sufficient for a verdict of guilt. *U.S. v. Bowers*, 660 F.2d 527 (5th Cir.1981); *People v. Henson*, supra. Numerous states, including Arizona, have held that expert testimony as to BCS is relevant in child abuse cases. *U.S. v. Bowers*, supra; *State v. Turrubiates*, 25 Ariz.App. 234, 542 P.2d 427 (1975); *People v. Jackson*, supra; *People v. Henson*, supra; *State v. Tanner*, 675 P.2d 539 (Utah 1983).

Once the court finds this evidence relevant, it must determine whether it is unduly prejudicial pursuant to Rule 403, Rules of Evidence, 17A A.R.S. See *State v. Tanner*, supra. Appellant argues that the court did not consider the prejudicial effect of this evidence before deciding it was admissible, but points to nothing in the record to support this contention. The court was cited to the cases listed above, obviously considered that caselaw, and decided that the evidence was admissible. There is no proof that the court did not consider the probative value versus the prejudicial effect of this evidence before admitting it.

■ In this case, the child is unable to testify, and the testimony of the doctors is clearly relevant to the issue of the cause of the injuries. Since other evidence is not available, this evidence is highly probative and, while prejudicial, its prejudicial effect does not substantially outweigh its probative value. The trial court did not abuse its discretion in finding this evidence admissible.[1]

■ Appellant also claims that Dr. Britton did not investigate all the factors involved in BCS and did not fully explain the syndrome when on the stand. The crux of appellant's argument is that Dr. Britton never interviewed appellant or any other members of the family besides the grandfather, and therefore could not compare the injuries to the explanations of the family as to how the injuries occurred. Even if we were to acknowledge that this was a deficiency in Dr. Britton's testimony, that deficiency went to the weight of her testimony and not to its admissibility. The weight and credibility to be given expert testimony are matters to be decided by the factfinder. Defense counsel may, and in this case did, challenge the testimony on cross-examination. See *State v. Tanner*, supra.

■ Appellant also argues that Dr. Jones' testimony should not have been admitted because he had never actually examined the child, but had simply looked at

---

1. We do not mean to imply that evidence concerning the BCS is never admissible if the child is able to testify on its own behalf.

reports and pictures. We find no requirement and do not consider it imperative that the doctor actually examine the child. Jones was an expert, he understood the syndrome and he knew what factors to look for. He had sufficient evidence before him from which he could formulate his expert opinion. Appellant also argues that neither doctor really understood the nature of a sun lamp. Again, if this is true, it goes to the weight and not the sufficiency of the expert testimony. The evidence as to BCS was properly admitted by the trial court.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

■ In order to establish ineffective assistance of counsel, a two-part standard must be met. Appellant must show that the attorney's performance did not meet minimal professional standards. Once that is done, appellant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. *State v. Lee,* 142 Ariz. 210, 689 P.2d 153 (1984). While we find it a close issue whether defense counsel at trial exhibited a minimal level of competence, we do not decide that issue since we find no reasonable probability that the result would have been different despite the alleged errors.

■ The crux of appellant's argument is that defense counsel was not prepared for the testimony on BCS. Throughout the pretrial motion, the only objection made by defense counsel to the BCS evidence was that the expert witness could not show a nexus between the injuries of the child and defendant. As stated earlier, such a nexus is not required of an expert testifying on BCS. The expert is only testifying as to whether this is or is not a battered child. Therefore, though strenuously argued, that objection was without merit. There were, however, other objections that defense counsel could have made but did not, allegedly because she was unprepared. One objection was that Dr. Britton had not interviewed the family which she admitted during cross-examination. However, it was apparent at trial that Dr. Britton was aware of appellant's story as to how the burns occurred, and it is immaterial whether Dr. Britton got that story through appellant or through a third party. Further, Dr. Britton testified that it would not have made a difference because of the nature and extent of the injuries. Therefore, any interview by Dr. Britton would have not have changed the result and appellant has shown no prejudice. There is no allegation, and we have no evidence before us, that there were any expert witnesses available to rebut Dr. Britton's testimony, and we will not speculate as to that.

Appellant also argues that he was denied effective assistance of counsel because defense counsel did not interview Dr. Britton until the first day of trial. While this is true, appellant has not shown that an earlier interview would have changed the result of the trial. Dr. Britton is clearly a qualified expert and no allegation is made that she is not. As stated earlier, there is no allegation that there were any experts available to rebut Dr. Britton's testimony.

Appellant argues that defense counsel erred in not challenging the testimony of Dr. Jones because he had not examined the child. Since, as we have held, there was no requirement that the expert examine the child, any such objection would have been fruitless.

Appellant also argues that the prosecutor was allowed to raise a suspicion of sexual abuse of the child without objection. Since Dr. Britton testified that she had found no evidence of sexual abuse, any error in failing to object was rendered harmless. In sum, we hold that even if counsel's performance was less than minimally competent, appellant was not prejudiced thereby.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.