805 P.2d 1057

**STATE of Arizona, Appellee,**

**v.**

**Robert Carl HERNANDEZ, Appellant.**

**No. 1 CA–CR 88–745.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 4, 1990.

Review Denied March 5, 1991.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EHRLICH, Judge.

Robert Carl Hernandez (the defendant) appeals from his conviction for negligent homicide. We affirm the judgment.

The facts, viewed in the light most favorable to sustaining the verdict, *State v. Zmich*, 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989), are as follows. In March, 1987, the defendant was living with Brenda Mullen and her two daughters, ages six and two and one-half years. On the night of March 25, 1987, Mullen left the house to pick up some friends. When she returned, the defendant met her at the door and told her that the younger daughter was unconscious. Mullen immediately called the emergency number, 911.

When the paramedics arrived, the defendant told them that he had fallen on the child while turning over her mattress, which she had wet, and that her injuries had resulted from this accident. However, the paramedics observed bruises on the child consistent with child abuse and inconsistent with the defendant's version of events. The child was taken to a hospital. The defendant agreed to go to the police station for questioning.

At the station, the defendant was read his *Miranda*[1] rights and further questioned about what had occurred. The officers noted certain inconsistencies in the defendant's story.

Some time after taking the defendant to the police station, the officers learned from hospital personnel that the child's injuries probably were caused by severe shaking. The officers so informed the defendant who admitted that he had shaken the child that night and that, when he shook her,

"her head went back and forth from a front to rear motion"; her head "would go all the way back and all the way forward and back and forward." He told the police that he had shaken her "four to six times." He also said that he had shaken the child before March 25. He claimed, however, that the injuries which had rendered her unconscious were due to the mattress having fallen on her or to his having fallen on her while attempting to turn the mattress.

The child, suffering from swelling of the brain and a subdural hematoma, was pronounced brain dead the next day. She then was disconnected from life support systems and died.

The defendant was indicted for manslaughter.

At trial, the state presented the testimony of the persons who had responded to the call and had questioned the defendant. They testified about the inconsistencies in the defendant's story and the appearance of the child.

The state also presented the testimony of Dr. Timothy Tong and Dr. Ronald S. Fischler, experts who testified that the child's injuries most likely had been caused by violent shaking and were consistent with the battered child syndrome. A neurosurgeon and two medical examiners concurred in the opinion that the child literally had been shaken to death.

Dr. Tong and Dr. Fischler explained that the battered child syndrome is a pattern of injuries which generally do not occur accidentally and which, taken together, indicate that a child's injuries were intentionally inflicted. Both doctors testified as to the location of these injuries, which included bruising of the child's face and head, shoulders and upper arm, abdomen, buttocks and knee. The doctors also noted a significant scratch on the victim's nose.

Dr. Fischler further testified as to the approximate age and the possible causes of the injuries. He determined that the blue bruises over and behind the ear lobe were "fresh," unusual and suggestive of inten-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tional trauma. He stated that the left cheek bruise was also "fresh" and possibly caused by impact or a direct blow. Dr. Fischler estimated that the right cheek bruise was three to five days old. Dr. Fischler noted that the brown-red bruise over the victim's right temple was irregular and consistent with, but not diagnostic of, a handprint. He also stated that the upper arm bruises were "reminiscent, but again not diagnostic of punishment marks, or grabbed marks." Dr. Fischler characterized the victim's abdominal bruises as small but relatively unusual in normal children. He termed the red-blue or red-brown parallel lines on the buttocks as "suspicious," and possibly caused by a hand or belt.

The child also sustained bruising over the boney portion of her knee which extended to the fleshy area above the knee. Dr. Fischler testified that this injury was possibly caused by a fall, but the extension of the bruise above the knee raised the possibility that it was caused by a blow.

The child's father testified that the child had shown no visible injuries when he had seen her last, a few days before she died.

The defendant testified as to his relationship with the child and his version of how her injuries had occurred. He admitted that he had spanked the child twice before with a leather belt, that he had shaken her on previous occasions, that he had spanked her that night for spilling her milk, and that he had shaken the child that night so hard that her head had rocked back and forth several times. He maintained, though, that it was his and/or the mattress' fall which had caused the fatal injuries. In addition to the defendant's testimony, the defense presented a number of character witnesses, including the victim's mother, who believed that the death had been an accident. The defense also presented testimony from three expert witnesses who testified that the child's injuries could have resulted from the defendant having fallen on her.

The jury found the defendant guilty of negligent homicide. The trial court sentenced him to four years probation with one year to be served in the county jail. The defendant filed a timely appeal.

On appeal, the defendant raises three issues: (1) whether the trial court erred by permitting the state to introduce evidence of the battered child syndrome; (2) whether the trial court erred by denying the defendant's motion for a mistrial after allowing the state to introduce testimony from a paramedic that he and another paramedic believed that child abuse had occurred; (3) whether the trial court erred by refusing to give the defendant's requested instruction 7.

## INTRODUCTION OF BATTERED CHILD SYNDROME EVIDENCE

■ The defendant contends that the trial court erred by denying his motion to preclude testimony from Dr. Tong and Dr. Fischler about the battered child syndrome. He argues that this testimony was unduly prejudicial and that it should have been excluded under Rules 403 and 404(b), *A.R. Evid.* We find no error.

In general, relevant evidence is admissible. Rule 402, *A.R.Evid.* However, Rule 403 permits the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Additionally, Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The issue of the admissibility of expert testimony about the battered child syndrome was addressed in *State v. Moyer,* 151 Ariz. 253, 255, 727 P.2d 31, 33 (App. 1986):

[Battered child syndrome] is not an opinion by a doctor as to whether any particular person has done anything, but rather simply indicates that a child of tender years found with a certain type of injury has not suffered those injuries by accidental means, but rather is the victim of

child abuse. The diagnosis is used in connection with very young children, usually four years of age or younger, who cannot testify themselves. It is based upon a finding that such child exhibits evidence of, among other things, subdural hematoma, fractures in various stages of healing, soft tissue swelling or skin bruising. Also pertinent to the diagnosis is evidence that the child is generally undernourished and that the severity of injuries on his body is inconsistent with the parents' story of their occurrence. [Citation omitted.]

The court in *Moyer* found testimony about the battered child syndrome to be admissible over objections that it violated Rule 403. The child was unable to testify and the testimony of the doctors clearly was relevant to the issue of the cause of the injuries. The highly probative quality of the evidence was found to substantially outweigh any unfairly prejudicial effect. *Id.; see State v. Poehnelt,* 150 Ariz. 136, 150, 722 P.2d 304, 318 (App.1985) (upholding admission of battered child syndrome testimony). The courts which have considered the issue have consistently upheld the admission of battered child syndrome testimony. *See e.g., United States v. Bowers,* 660 F.2d 527, 529 (5th Cir.1981), and cases cited; *State v. McKowen,* 447 N.W.2d 546, 549 (Iowa App.1989); *Commonwealth v. Rodgers,* 364 Pa.Super. 477, 480–81, 528 A.2d 610, 613–14 (1987); *State v. Johnson,* 135 Wis.2d 453, 456–58, 400 N.W.2d 502, 505–07 (App.1986); *State v. Dumlao,* 3 Conn.App. 607, 613, 491 A.2d 404, 410 (1985); *Eslava v. State,* 473 So.2d 1143, 1147 (Ala.Crim.App.1985); *State v. Tanner,* 675 P.2d 539, 543–44 (Utah 1983); *State v. Steward,* 34 Wash.App. 221, 223, 660 P.2d 278, 280 (1983); *Goldade v. State,* 674 P.2d 721, 727 (Wyo.1983); *People v. Ellis,* 41 Colo.App. 271, 273, 589 P.2d 494, 496 (1978); *State v. Best,* 89 S.D. 227, 233–34, 232 N.W.2d 447, 453–54 (1975); *State v. Taylor,* 163 Mont. 106, 114, 515 P.2d 695, 703 (1973). *See generally* Annot., *Admissibility of Expert Medical Testimony on Battered Child Syndrome,* 98 A.L.R. 3d 306 (1980). Indeed, the court in *Moyer* concluded that this type of expert

testimony, together with proof that the injuries occurred while the child was entrusted to the care of the defendant, is sufficient for a guilty verdict. 151 Ariz. at 255, 727 P.2d at 33.

Evidence about the battered child syndrome was clearly relevant to this case. The child had died. Her body showed a pattern of injuries inconsistent with those accidentally inflicted upon a typical two-and-one-half-year-old child. The jurors, as laymen, lacked the medical expertise to determine whether the child's injuries were more likely to have been accidentally or intentionally inflicted. Expert testimony by Dr. Tong and Dr. Fischler therefore was relevant and helpful to the jury in reaching a verdict. *See generally State v. Plew,* 155 Ariz. 44, 49, 745 P.2d 102, 107 (1987) (discussion of admissibility of expert testimony to explain "esoteric topics" such as the general characteristics of a victim of battered child syndrome).

The same expert testimony did not unfairly prejudice the defendant. He admitted that he had caused the child's injuries that night, although he asserted that the fatal injuries were the result of an accident. The doctors' testimony assisted the jury in evaluating how the injuries occurred, whether accidentally or intentionally inflicted.

The testimony of Dr. Fischler and Dr. Tong need not have been excluded under Rule 404(b). The evidence was not used to prove the character of the defendant in order to show that he acted in conformity with that character on the night the child was fatally injured. The doctors testified as to their examinations of the child and they testified as to the elements of the battered child syndrome. Their conclusion was that, in their experience as doctors, the child's injuries were consistent with the battered child syndrome and unlikely to have been inflicted in the manner asserted by the defendant. Even if the doctors' testimony could be construed as evidence of other wrongs, the testimony regarding the injuries establishing the battered child syndrome was admissible for the other purposes listed under Rule 404(b), specifically the absence of accident.

## PARAMEDIC'S TESTIMONY

The defendant contends that the trial court erred by denying his motion for mistrial after a paramedic gave the following testimony:

A. While [the defendant] was gone, when he walked out of the room I immediately went over to Captain Rambo, who arrived at this time, and had been attending to the patient. Captain Rambo is the paramedic captain. I asked Dick, "Dick, does this look like a child abuse case to you?" He said, "It sure does."

Q. What did you do then in response to that? What did you do next?

A. I think we did write child abuse. Somebody wrote child abuse on top of the fire report.

The defendant did not object to this testimony but, after another question and answer as to whether the defendant had returned to the room, moved for a mistrial and dismissal with prejudice on the basis of the quoted testimony. The prosecutor observed that defense counsel had not objected in a timely manner. The court denied the defendant's motion as premature because the testimony had been with regard to contemporaneous injuries, affirming its earlier ruling barring evidence of prior injuries to which the defendant could not be necessarily connected.

■ We will affirm the denial of a motion for mistrial absent a showing of an abuse of the trial court's discretion. *State v. Lamb*, 142 Ariz. 463, 470–71, 690 P.2d 764, 771–72 (1984). In a criminal case, hearsay evidence admitted without objection is competent evidence admissible for all purposes unless its admission amounts to fundamental error. *State v. McGann*, 132 Ariz. 296, 299, 645 P.2d 811, 814 (1982).

■ Fundamental error has been defined as error going to the foundation of the case or taking an essential right from the defendant, and as "error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial." *State v. Thomas*, 130 Ariz. 432, 435–36, 636 P.2d 1214, 1217–18 (1981), quoting *State v. Smith*, 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977). First, it must be determined whether the trial court erred. *Id.* at 436,

636 P.2d at 1218. Second, the prejudicial effect of the error must be evaluated in light of the entire record. *Id.*

If there is substantial evidence in the record to support the verdict and it can be said that the error did not, beyond a reasonable doubt, contribute significantly to the verdict, reversal is not required. If, however, it appears that the error did contribute to or significantly affect the verdict, fundamental error was committed and reversal is mandated on due process grounds, *i.e.*, it cannot be said it is possible for a defendant to have had a fair trial. [Citation omitted.]

*Id.*

■ In this case, even assuming that the admission of the paramedic's testimony was error, its admission did not constitute fundamental error. Given the photographs and the lay and expert testimony about the child's injuries and her general condition, this portion of Saporiti's testimony could not have influenced the jury to a degree sufficient to constitute fundamental error. When we consider the totality of the evidence presented, the trial court did not abuse its discretion by refusing to grant the defendant's motion for mistrial.

## JURY INSTRUCTION

■ The defendant contends that the trial court erred by denying his requested instruction 7:

You will only consider the lesser offense if you determine that the defendant is not guilty of the greater offense. If you determine that the defendant, for example, is guilty of manslaughter you stop right there. It is only if you determine that he is not guilty of manslaughter that then you will consider negligent homicide. You must then determine whether the defendant is guilty beyond a reasonable doubt of negligent homicide.

The court gave the following Recommended Arizona Jury Instruction (RAJI):

If you determine that the defendant is guilty of either manslaughter or negligent homicide, but if you have a reasonable doubt as to which it was, you must find the defendant guilty of negligent homicide.

The instruction given, part of RAJI 11.-02, has the qualified approval of the Arizona Supreme Court. *See* R. Gerber, *Recommended Arizona Jury Instructions— Criminal* (1989), p. xviii. However, in *State v. Wussler*, 139 Ariz. 428, 430, 679 P.2d 74, 76 (1984), our Supreme Court stated that the instruction requested by the defendant is preferable to the RAJI instruction. The Supreme Court reaffirmed *Wussler* in *State v. Staatz*, 159 Ariz. 411, 768 P.2d 143 (1988), but in neither *Wussler* nor *Staatz* did it give any indication that to give the RAJI instruction constituted reversible error. While the *Wussler* instruction may have been the preferable one, we see no basis for reversal.

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error, and have found none. For the above reasons, the conviction and sentence are affirmed.

CLABORNE, P.J., and
KLEINSCHMIDT, J., concur.