893 P.2d 60

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–506561.**

**No. 1 CA–JV 93–0040.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 20, 1994.

Review Denied April 25, 1995.*

Richard M. Romley, Maricopa County Atty. by Harold F. Brenneman, Jr., Deputy County Atty., Mesa, for State of Ariz.

---

\* Zlaket and Martone, JJ., of the Supreme Court, voted to grant the petition for review.

Theut, Theut & Theut, P.C. by David M. Theut, Phoenix, for Juvenile.

## OPINION

EHRLICH, Presiding Judge.

K.T., a juvenile,[1] appeals from her adjudications of delinquency for manslaughter and theft. She presents two arguments: first, that the juvenile court erred in considering manslaughter as a lesser-included offense of first-degree murder and, second, that the court's ruling barring her counsel from attending a court-ordered psychological evaluation violated her Fifth and Sixth Amendment rights. Because we find that the evidence supports a manslaughter determination and that the juvenile's Fifth and Sixth Amendment rights were not violated, we affirm the adjudications and dispositions.

### FACTS [2] AND PROCEDURAL HISTORY

On February 5, 1993, L.T., the juvenile's mother, was found dead in her home from a single gunshot to the back of her head. K.T., age 12, was charged with theft, conspiracy to commit first-degree murder, first-degree murder and armed robbery. She admitted having killed her mother, but she claimed self-defense to the charge of first-degree murder predicated upon Battered Child Syndrome. After a delinquency proceeding, K.T. was found guilty of manslaughter and theft.

During the trial, K.T. moved to allow defense counsel to be present during the psychological examination of her by the state's psychologist, Dr. Jeffrey Harrison, or, alternatively, to allow the examination to be tape-recorded. The juvenile court denied the motion with regard to counsel's presence at the

1. The initials of the juvenile and of the victim are used to protect the privacy of the juvenile.

2. This court views the evidence in the light most favorable to upholding the juvenile court's decision; therefore, all reasonable inferences are resolved against the juvenile. *Maricopa County Juvenile Action No. JV–123196*, 172 Ariz. 74, 78, 834 P.2d 160, 164 (App.1992).

3. In its brief, the state incorrectly asserts that "[m]anslaughter *is* a lesser included offense of first degree murder," (emphasis added), relying

examination, but ordered that the examination could be tape-recorded if Dr. Harrison felt that it would not adversely affect the outcome. When Dr. Harrison informed the court that the outcome would be negatively influenced, the court also denied that portion of K.T.'s motion.

At the conclusion of the trial, K.T. filed a motion for a new trial based upon the same two arguments presented to this court. The motion was denied and K.T. timely appealed.

## DISCUSSION

### A. Lesser-included Offense of Manslaughter

K.T. contends that the evidence was insufficient to support a determination of manslaughter. She specifically argues that she was either guilty of first-degree murder or not guilty and, therefore, that the juvenile court should not have considered the lesser-included offense of manslaughter. We do not agree.

When supported by the evidence, a consideration of the offense of manslaughter is required in a trial for first-degree murder. *E.g., State v. Lamb*, 142 Ariz. 463, 472, 690 P.2d 764, 773 (1984). It is fundamental error not to do so. *Id.*[3] Conversely, "when the record is such that the defendant is either guilty of the crime charged or not guilty," for example, when the defendant has denied responsibility for the death, the trial court need not contemplate a lesser-included offense. *State v. Salazar*, 173 Ariz. 399, 408, 844 P.2d 566, 575 (1992). Thus the central inquiry is whether there is sufficient evidence to support the lesser offense.

on a quotation from *State v. White*, 144 Ariz. 245, 247, 697 P.2d 328, 330 (1985), in *State v. Tucker*, 157 Ariz. 433, 447, 759 P.2d 579, 593 (1988). However, *White* was misquoted in *Tucker;* the court had stated that "[m]anslaughter *can* be a lesser-included offense of murder," 144 Ariz. at 247, 697 P.2d at 330 (emphasis added), and the remainder of the paragraph in *Tucker* states, directly after the citation to *White*, "... and the trial court should have given a manslaughter instruction if the evidence at trial would have supported a manslaughter conviction." 157 Ariz. at 447, 759 P.2d at 593.

The pertinent portion of the manslaughter statute, Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–1103,[4] provides:

A. A person commits manslaughter by:

\* \* \* \* \* \*

2. Committing second degree murder as defined in § 13–1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim.

Second-degree murder is defined in relevant part in A.R.S. section 13–1104 as follows:

A. A person commits second degree murder if without premeditation:

1. Such person intentionally causes the death of another person; ...

Given that K.T. admitted to having intentionally killed her mother, the issue became one of premeditation or, if that element of murder was lacking, whether there existed the requisite "heat of passion resulting from adequate provocation by the victim." The juvenile court made the following findings of fact after an exhaustive hearing:

1. [K.T.] intentionally killed her mother [L.T.] during the evening of February 5, 1993 by shooting her in the back of the head while the mother was asleep on the living room couch. [K.T.] knew at the time she shot and killed her mother that it was wrong.

2. [K.T.] did not act in self-defense and was not legally justified in using deadly physical force to kill [L.T.] during the evening of February 5, 1993.

3. [K.T.] acted in a heat of passion caused by years of severe physical and emotional abuse and neglect inflicted on [K.T.] and [her sister] by the victim, [L.T.].

4. The severe abuse and neglect inflicted by [L.T.] on [K.T.] and [her sister] was adequate provocation to deprive a reasonable child who was the victim of such abuse and neglect of self control.

\* \* \* \* \* \*

3. First Degree Murder in violation of A.R.S. Section 13–1105 as alleged in Count III has not been proven true beyond a reasonable doubt. However, the Court finds that the lesser included offense of Manslaughter in violation of A.R.S. Section 13–1103(A)(2) has been proven true beyond a reasonable doubt.

The juvenile relies on *State v. Reid*, 155 Ariz. 399, 401, 747 P.2d 560, 562 (1987), a case involving the shooting death of a father by his adult daughter in which the Arizona Supreme Court said that the evidence was insufficient to support a finding of reckless manslaughter when the victim was shot while he was asleep and 2.5 hours after a fight with his daughter. The daughter and her fiance lived with the father; the fiance's sister also was there that night. The significance of *Reid* for this case, which is not one of reckless manslaughter, is in the court's analysis that the lapse of time between the fight and the homicide negated a finding of "heat of passion" sufficient to find the daughter guilty of the lesser crime of manslaughter. However, the similar delay in this case calls into analysis the Battered Child Syndrome.

■ A "heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the same facts and circumstances." *State v. Doss*, 116 Ariz. 156, 162, 568 P.2d 1054, 1060 (1977), citing *State v. Harwood*, 110 Ariz. 375, 379, 519 P.2d 177, 181 (1974) (*quoting People v. Danielly*, 33 Cal.2d 362, 202 P.2d 18, 27, *cert. denied*, 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1728 (1949)). "Adequate provocation" is "conduct or circumstances sufficient to deprive a reasonable person of self-control." A.R.S. § 13–1101(4). These determinations are questions for the finder of fact, *see People v. Burts*, 256 Ill.App.3d 972, 195 Ill.Dec. 51, 628 N.E.2d 515, 519 (1993); *People v. Cooley*, 211 Cal.App.2d 173, 196, 27 Cal.Rptr. 543, 555 (1963), and thus are reviewed on appeal only for clear error. *State v. Burr*, 126 Ariz. 338, 339, 615 P.2d 635, 636 (1980).

■ The recognition and admission of evidence regarding the Battered Child Syndrome in Arizona is established. *E.g., State*

---

4. This portion of the statute is unchanged since 1978. *See* 1993 Sess.Laws, ch. 255, § 18, amending the statute in other respects effective January 1, 1994.

*v. Hernandez,* 167 Ariz. 236, 238–39, 805 P.2d 1057, 1059–60 (App.1990), and cases cited; *see generally,* Milton Roberts, Annotation, *Admissibility of Expert Medical Testimony on Battered Child Syndrome,* 98 A.L.R.3d 306 (1980). The Syndrome initially was described in medical terms, *Hernandez,* 167 Ariz. at 238–39, 805 P.2d at 1059–60 (quoting *State v. Moyer,* 151 Ariz. 253, 255, 727 P.2d 31, 33 (App.1986)), but since has been expanded to include psychological components.[5] The testimony by the experts on each side in this case was that victims of Battered Child Syndrome live in a state of constant fear of unpredictable violence and abuse. Frank Miller, M.D., the defense expert, described these children as "youngsters who have been subjected to horrific abuse, more than episodic or occasional, sustained repetitive terrorizing abuse over long periods of time. . . ." The record in this case is replete with examples of the terrible and degrading physical and emotional abuse suffered by the juvenile and her younger sister. Perhaps the most compelling evidence was the testimony of the defense expert, Dr. Miller:

> I have only seen a few cases in my career that approach the heinous treatment seen here. The only ones that have exceeded that that I've seen are always postmortem of the child.

Dr. Miller elaborated on K.T.'s constant fear of imminent irrational punishment. The punishment was worsening in intensity and severity to the point of possible death, punctuated by the presence of a casket in the house in which, it was threatened by L.T., K.T. and her sister could find themselves. This was underscored by the fact that both K.T. and her sister had been choked to the point of unconsciousness by L.T., whom Dr. Miller characterized as "sadistic." Indeed,

he compared K.T.'s mental state to that of a concentration camp victim "[l]iving in a state of terror." He observed that such a mental state would cause someone to do an act otherwise violative of her own moral standards and that K.T. believed that, particularly given the lack of response from adult authorities from whom she repeatedly had sought help,[6] shooting her mother was her only option to protect herself and her younger sister from further peril and death. K.T. felt especially helpless with regard to protecting her younger sister, whom she believed to be suicidal; immediately before K.T. shot her mother, K.T.'s sister had told K.T. once more that she wanted to kill herself. When this obviously traumatic development is combined with the chronic emotional and physical abuse that characterizes and prompts the medical determination that Battered Child Syndrome exists, K.T.'s mental state fairly could be described as a sustained "heat of passion . . . as would naturally be aroused in the mind of an ordinarily reasonable person under the same facts and circumstances," *Doss,* 116 Ariz. at 162, 568 P.2d at 1060, "sufficient to deprive a reasonable person of self-control." A.R.S. § 13–1101(4).[7] It was not error for the juvenile court to conclude that the 12–year–old girl acted in such a state and as a "result of adequate provocation," and find K.T. guilty of manslaughter.

## B. Fifth and Sixth Amendment Claims

■ The juvenile next claims that the court's decision to bar her counsel from attending the court-ordered psychiatric evaluation was a violation of her Fifth Amendment right against self-incrimination and her Sixth Amendment right to the assistance of counsel. She concedes that the Arizona Supreme

5. Experts from both sides in this case testified that Battered Child Syndrome is a corollary of Post-traumatic Stress Disorder and that K.T. suffered from that disorder. The condition is described in the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., 1994), 309.81.

6. K.T., and persons on her behalf, had, without success, sought help numerous times from state, police and school officials. Within a week of the killing alone, there was one more contact with the police and three with the Arizona Depart-

ment of Economic Security Child Protective Services.

7. In a somewhat analogous situation, there exists A.R.S. § 13–415, to which the juvenile court alluded, which provides in the context of a battered spouse that "[i]f there have been past acts of domestic violence . . . against the defendant by the victim, the state of mind of a reasonable person . . . shall be determined from the perspective of a reasonable person who has been a victim of those past acts of domestic violence."

Court has determined that the presence of defense counsel at a court-ordered mental examination is not constitutionally required. *State v. Schackart,* 175 Ariz. 494, 501, 858 P.2d 639, 646 (1993). Nonetheless, she argues that, especially as a juvenile charged with a crime, she is entitled to this constitutional protection and she points to a footnote in *Schackart* in which the court chose not to opine whether the right to counsel's presence, while not constitutionally mandated, should be extended by its rulemaking authority to criminal defendants. *Id.* at 502 n. 1, 858 P.2d at 647 n. 1. Obviously this court cannot exercise the supreme court's rulemaking authority and we see no reason to depart from settled law in this case.

In *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the Supreme Court ruled that the prosecution's use of a mental examination report to rebut a defendant's proffered psychological evidence did not violate the Fifth Amendment right established in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). It noted the critical distinction between the Fifth Amendment rights of a criminal defendant who "neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence," 483 U.S. at 422, 107 S.Ct. at 2917 (*quoting Smith,* 451 U.S. at 468, 101 S.Ct. at 1875–76), and one who, as in the case at bar, "requests such an evaluation or presents psychiatric evidence" as part of an "entire defense strategy ... to establish [a] 'mental status' defense...." *Id.* 483 U.S. at 422–23, 107 S.Ct. at 2918. The Arizona Supreme Court echoed this reasoning when it said that a defendant "who places his or her mental condition in issue and gives notice of an intention to rely on psychiatric testimony has 'opened the door' to an examination by an expert appointed on motion of the state," and thus effectively waived any Fifth Amendment privilege. *Schackart,* 175 Ariz. at 500, 858 P.2d at 645. *See State v. Mauro,* 159 Ariz. 186, 195, 766 P.2d 59, 68 (1988) (" '[S]ince the appellant was examined at his own request, the exposure which was invited was a clear waiver of constitutional guarantees.' *State v. Smith,* 131 Ariz. 29, 34, 638 P.2d 696, 701 (1981)."). "To hold otherwise would deprive the state of the only adequate

means to contest the conclusions of a defense psychiatric expert." *Schackart,* 175 Ariz. at 500, 858 P.2d at 645.

In the case at bar, it was the juvenile who offered Battered Child Syndrome as a mental status defense to first-degree murder. Having thus placed her mental condition in issue to acquit herself, she cannot now be heard to complain that her Fifth Amendment rights were in some way compromised.

■ The *Buchanan, Smith* and *Schackart* cases also provide guidance with respect to the Sixth Amendment right to counsel at a court-ordered mental examination. As the Court in *Buchanan* explained, "the proper concern of [the Sixth] Amendment [is] the consultation with counsel...." 483 U.S. at 424, 107 S.Ct. at 2919. After noting that "[s]uch consultation, to be effective, must be based on counsel's being informed about the scope and nature of the proceeding ... [and] counsel's awareness of the possible uses to which petitioner's statements in the proceeding could be put," *id.* at 424–25, 107 S.Ct. at 2919, the Court concluded that there could be no Sixth Amendment violation when "counsel was certainly on notice that if ... he intended to put on a 'mental status' defense ... he would have to anticipate the use of psychological evidence by the prosecution in rebuttal." *Id.* at 425, 107 S.Ct. at 2919 (footnote omitted). The contrary had been true in *Smith* in which the defendant had been afforded no opportunity to discuss the examination with counsel. 451 U.S. at 471, 101 S.Ct. at 1877.

In this case, K.T. was being advised by her counsel who put her mental status under scrutiny prior to the court-ordered examination. K.T. already had been examined by Dr. Miller. Her counsel unquestionably was "on notice" regarding the potential use to which K.T.'s statements could be utilized by the prosecution. In the words of the Arizona Supreme Court, "[w]hile counsel's presence during [a] psychiatric examination might bestow a strategic benefit, it is not required to ensure a defendant's right to a fair trial." *Schackart,* 175 Ariz. at 501, 858 P.2d at 646.

Further, the court in *Schackart* explicitly recognized the potential that "counsel's pres-

ence at a psychiatric examination might actually 'hinder the psychiatrist from effectively examining the defendant.'" *Id.* (*quoting State v. Hardy,* 283 S.C. 590, 592, 325 S.E.2d 320, 322 (1985)). *Accord Smith,* 451 U.S. at 470 n. 14, 101 S.Ct. at 1876–77 n. 14 (attorney's presence "might seriously disrupt the examination").[8] The juvenile court's order barring K.T.'s counsel from attending the mental evaluation by Dr. Harrison reflected its as well as Dr. Harrison's concerns that counsel's presence could frustrate Dr. Harrison's examination and the court's additional recognition that counsel's presence potentially placed counsel in an ethical dilemma as both counsel and witness to the examination. When the holdings of the Court in *Buchanan* and *Smith* and the admonition of the court in *Schackart* are coupled with the facts of this case and the discretion which must be given the trial court with regard to counsel's presence at the examination, the juvenile court's order was not violative of the juvenile's Sixth Amendment rights.

### CONCLUSION

Because we find that the evidence before the juvenile court supports a finding of manslaughter and that the order barring the juvenile's counsel from the court-ordered psychological examination did not violate her Fifth and Sixth Amendment rights, we affirm.

WEISBERG, J., concurs.

VOSS, Judge, concurring in part; dissenting in part.

I concur with the majority's holding that barring the presence of K.T.'s counsel at a court-ordered mental examination did not violate the juvenile's constitutional rights. However, I respectfully dissent from the majority's holding that the evidence supports a manslaughter conviction.

As revealed at trial, the victim fell asleep on the living room couch. At that time, K.T. and her sister retrieved a gun, loaded it, and then walked out in the backyard. Upon returning to the living room, K.T. told her sister where to stand when the shooting took place and then pulled the trigger. Afterward, the girls took money and the keys to the van from the victim's purse and drove off to the store to make some purchases.

Arizona Revised Statutes Annotated section 13–1103 provides that "[a] person commits manslaughter by: Committing second degree murder . . . upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." The majority concedes that a sudden quarrel was not involved in the shooting, but contends that there was sufficient evidence that the shooting resulted from a heat of passion due to adequate provocation from the victim. An analogous argument was presented and rejected in *Reid,* 155 Ariz. 399, 747 P.2d 560. In *Reid,* a daughter that was subjected to over twelve years of sexual, psychological, and physical abuse, shot her father in the head as he slept. The daughter's defense centered around his abuse and violent psychotic acts that caused her to fear for her life. An expert witness testified that the daughter's personality disorder compelled her to stay with her father and to believe that the only way out was to kill him. On appeal, the supreme court rejected the defendant's argument that the manslaughter instruction should have been given. The court found the evidence insufficient to support a finding that the killing occurred "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." A.R.S. § 13–1103(A)(2). The court found:

> Whatever might have occurred before the victim retired for the evening is immaterial because the defendant waited two and a half hours before shooting him. The evidence presented no sudden quarrel between the victim and the accused. Neither was there any evidence that the victim provoked the accused. From testimony at trial, evidence was insufficient to indicate that the killing occurred in the heat of passion or immediately after a quarrel.

---

8. Arizona Rule of Civil Procedure 35 similarly states that the "person to be examined shall have the right to have a representative present during the examination, unless the presence of that representative may adversely affect the outcome of the examination."

*Reid,* 155 Ariz. at 401, 747 P.2d at 562. The court focused on the two and one-half hours lapse of time between the fight with his daughter and the subsequent shooting.

Here, the majority concedes that there was a similar lapse of time between the fight and the ultimate shooting; however they contend that because K.T. was a victim of battered child syndrome, she was in a constant heat of passion. The majority argues that K.T. lived in a constant state of fear, believing that shooting her mother was her only option to protect herself and her sister.

As in *Reid,* there was no evidence presented at trial that the shooting occurred upon a sudden quarrel or heat of passion. K.T. shot her mother as her mother slept after a lapse of time or "cooling off period" which would negate any heat of passion or sudden quarrel. To adopt the majority's position commissions the manslaughter instruction to any defendant claiming abuse.

Because the evidence does not support the finding that K.T. shot her mother in a heat of passion, the court erred in convicting K.T. of manslaughter.